[No. A097623. First Dist., Div. One. Jan. 9, 2003.]

DAVID COLLINS et al., Plaintiffs and Appellants, v.
OVERNITE TRANSPORTATION COMPANY, Defendant and
Respondent.

## Counsel

Van Bourg, Weinberg, Roger & Rosenfeld, David A. Rosenfeld and Lisa W. Pau for Plaintiffs and Appellants

Paul, Hastings, Janofsky & Walker, Peter S. Rukin and M. Kirby C. Wilcox for Defendant and Respondent

## Opinion

**SWAGER, J.**—David Collins, Ed Lizarrago, and Mitch Moreno appeal a judgment dismissing their complaint for unpaid overtime compensation and other relief against their employer, Overnite Transportation Company (hereafter Overnite). We affirm.

### Procedural Background

Appellants are truck drivers employed by Overnite, a motor carrier. In a complaint filed in Alameda County Superior Court on May 3, 2001, they brought a class action on their own behalf and on behalf of other driver employees, seeking compensation for unpaid overtime pay and other relief. The complaint alleged several causes of action based on various violations of the Labor Code and Unfair Practices Act, which were each predicated on the theory that the Eight-Hour-Day Restoration and Workplace Flexibility Act of 1999 imposed new statutory liability on motor carriers relating to hours of service of their employees. Overnite filed a demurrer raising an exemption for motor carriers contained in wage order No. 9 of the Industrial Welfare Commission (IWC). In an order filed August 6, 2001, the trial court sustained the demurrer without leave to amend and subsequently filed a judgment on December 12, 2001, in favor of Overnite. Appellants filed a timely notice of appeal.

The appeal calls on us to review the pertinent exemption in wage order No. 9 of the IWC, the purpose and effect of Eight-Hour-Day Restoration and Workplace Flexibility Act of 1999, and certain disputed language in Labor Code section 515, subdivision (b)(2).

## DISCUSSION

### A. *Wage Order No. 9*

"The IWC is a five-member appointive board initially established by the Legislature in 1913. For the first 60 years of its existence, the IWC's mission was to regulate the wages, hours and conditions of employment of *women and children* employed in this state, in furtherance of such employees' 'health and welfare.' To this end, the commission—beginning in 1916—promulgated a series of industry- and occupation-wide 'wage orders,' prescribing various minimum requirements with respect to wages, hours and working conditions to protect the health and welfare of women and child laborers." (*Industrial Welfare Com. v. Superior Court* (1980) 27 Cal.3d 690, 700 [166 Cal.Rptr. 331, 613 P.2d 579].) "There was no similar state overtime requirement for adult male workers, although in 1938 those workers were covered by different overtime rules under the provisions of the federal Fair Labor Standards Act of 1938 (FLSA) (29 U.S.C. §§ 201-219)." (*California Labor Federation v. Industrial Welfare Com.* (1998) 63 Cal.App.4th 982, 986 [74 Cal.Rptr.2d 397].)

"In the early 1970s, a number of federal judicial decisions invalidated a substantial portion of the then-prevailing IWC wage orders on the ground that the limited application of such orders to *women* workers (and children) violated the prohibition on sex discrimination embodied in title VII of the federal Civil Rights Act of 1964. [Citations.] In response to these federal decisions, the California Legislature in 1972 and 1973 amended the applicable provisions of the Labor Code to authorize the IWC to establish minimum wages, maximum hours and standard conditions of employment for *all* employees in the state, men as well as women. [Citations.] The constitutionality of this legislative expansion of the IWC's jurisdiction to all California workers is explicitly confirmed by article XIV section 1 of the California Constitution . . . ." (*Industrial Welfare Com. v. Superior Court, supra,* 27 Cal.3d 690, 700-701; see also *Bell v. Farmers Ins. Exchange* (2001) 87 Cal.App.4th 805, 810 [105 Cal.Rptr.2d 59].)

The expansion of its jurisdiction in the mid-1970's "did not alter the basic nature of the IWC's decision-making authority . . . ." (*Industrial Welfare Com. v. Superior Court, supra,* 27 Cal.3d 690, 701.) As noted by our high court, "Judicial authorities have repeatedly emphasized that in fulfilling its broad statutory mandate, the IWC engages in a quasi-legislative endeavor, a task which necessarily and properly requires the commission's exercise of a considerable degree of policy-making judgment and discretion." (*Id.* at p.

702.) In the exercise of this quasi-legislative power, the IWC has promulgated 15 wage orders, following a similar format, which each apply to separate industries or occupations. (See *Morillion v. Royal Packing Co.* (2000) 22 Cal.4th 575, 581 [94 Cal.Rptr.2d 3, 995 P.2d 139]; Cal. Code Regs., tit. 8, § 11000 et seq.) Wage order No. 9 applies to the transportation industry. (See Cal. Code Regs., tit. 8, § 11090.)

Wage order No. 9-76, the first wage order promulgated for the transportation industry under the IWC's present jurisdiction, provided that the state regulation of hours of service did not apply to "employees whose hours of service are regulated by the United States Department of Transportation Code of Federal Regulations, Title 49, Sections 395.1 to 395.13, Hours of Service of Drivers." (See wage order No. 9-76, subd. 3(I).) The cited regulations form part of the Federal Motor Vehicle Safety Standards (49 C.F.R. § 371 et seq. (2001)) and establish a unique regulatory scheme regulating the driving hours of truck drivers, which is designed to balance safety considerations against the demands of the trucking industry. They exist under statutory authority for the regulation of motor vehicle safety (49 U.S.C. § 31501(b)(1)), which has a pedigree going back to the Motor Carrier Act, 1935. (49 Stat. 543, 546.) Those motor carrier employees, whose hours of service are regulated by this set of safety standards, have always been exempted from the coverage of the federal Fair Labor Standards Act of 1938. (See 29 U.S.C. § 213(b)(1), Pub.L. No. 718 (June 25, 1938) and 52 Stat. 1068.)

Subsequent revisions of wage order No. 9, reflected in wage order Nos. 9-80 and 9-90, retained this exemption based on Federal Motor Vehicle Safety Standards and added a reference to a parallel set of California regulations in title 13, California Code of Regulations, subchapter 6.5, governing the maximum driving and on-duty time of truck drivers. (See wage order No. 9-80, subd. 3(I) and wage order No. 9-90, subd. 3(H).) As in effect during 1997, wage order No. 9-90, subdivision 3(H), provided: "The provisions of this section are not applicable to employees whose hours of service are regulated by (1) the United States Department of Transportation Code of Federal Regulations, title 49, sections 395.1 to 395.13, Hours of Service of Drivers, or (2) Title 13 of the California Code of Regulations, subchapter 6.5, section 1200 and following sections, regulating hours of drivers." An identical exemption is contained in 11 other wage orders covering industries that may involve use of motor carriers.[1]

---

[1] See wage order No. 1-2001, Manufacturing Industry, section 3(A)(2); wage order No. 2-2001, Personal Service Industry, section 3(J); wage order No. 3-2001, Canning, Freezing &

B. *Eight-Hour-Day Restoration and Workplace Flexibility Act of 1999*

The Eight-Hour-Day Restoration and Workplace Flexibility Act of 1999 (hereafter Act) was in large measure a response to the IWC's amendment of five wage orders on April 11, 1997, which, among other things, eliminated the state's daily overtime rule in favor of the less restrictive weekly overtime rule of the federal FLSA. Prior to amendment, the IWC wage orders established a rule requiring payment of overtime for more than eight hours of work in a *day*; the FLSA required payment of overtime for hours worked beyond 40 hours in a *week*. (See *California Labor Federation v. Industrial Welfare Com., supra,* 63 Cal.App.4th 982, 986-989.) These amendments, which were effective January 1, 1998, applied to the wage orders covering manufacturing; professional, clerical, mechanical and similar occupations; public housekeeping industry; mercantile industry; and transportation industry.[2]

Section 21 of the Act declared the five wage orders, as amended effective January 1, 1998, to be null and void and reinstated the earlier wage orders that were in effect during 1997.[3] Other portions of the Act established a new statutory scheme governing hours of labor and overtime compensation for *all* industries and occupations, which codified certain provisions of IWC wage orders, amended other provisions, and added a series of new options for alternative workweeks. The alternative workweek provisions do not concern this appeal. It is important to note, however, that Labor Code section 510 constitutes the key provision in this new statutory scheme. As amended by the Act, section 510 now states the general eight-hour-day rule that was earlier contained only in wage orders. Subdivision (a) of section 510 provides in part: "Eight hours of labor constitutes a day's work. Any work in excess of eight hours in one workday and any work in excess of 40 hours in any one workweek and the first eight hours worked on the seventh day of

Preserving Industry, section 3(I); wage order No. 4-2001, Professional, Technical, Clerical, Mechanical, & Similar Occupations, section 3(K); wage order No. 5-2001, Public Housekeeping Industry, section 3(I); wage order No. 6-2001, Laundry, Linen Supply, Dry Cleaning, & Dyeing Industry, section 3(J); wage order No. 7-2001, Mercantile Industry, section 3(K); wage order No. 8-2001, Industry Handling Products After Harvest, section 3(K); wage order No. 10-2001, Amusement & Recreation Industry, section 3(L); wage order No. 13-2001, Industries Preparing Agricultural Products for Market, on the Farm, section 3(I); and wage order No. 14-2001, Agricultural Occupations, section 3(D). See IWC Web site at <http://www.dir.ca.gov/iwc> (as of Jan. 9, 2003).

[2](See legislative findings in § 2 of Act; Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Assem. Bill No. 60 (1999-2000 Reg. Sess.) as amended July 1, 1999.)

[3]"Sec. 21. Wage orders number 1-98, 4-98, 5-98, 7-98, and 9-98 adopted by the Industrial Welfare Commission are null and void, and Wage Orders 1-89, 4-89 as amended in 1993, 5-89 as amended in 1993, 7-80, and 9-90 are reinstated until the effective date of wage orders. issued pursuant to Section 517."

work in any one workweek shall be compensated at the rate of no less than one and one-half times the regular rate of pay for an employee."

## C. *Labor Code Section 515, Subdivision (b)(2)*

 Appellants contend that, with respect to truck drivers in their class, the Act eliminated the exemption for motor carriers contained in past wage orders and brought them within the overtime rules of Labor Code section 510 and other pertinent provisions of the Act. Each of their causes of action alleges violations of the Act, which necessarily assumes that appellants are no longer within the motor carrier exemption. Their interpretation of the Act rests on subdivision (b)(2) of Labor Code section 515, the provision dealing with overtime exemptions.

Subdivision (b)(2) of Labor Code section 515 consists of two sentences, of which the first provides: "Except as otherwise provided in this section and in subdivision (g) of Section 511, nothing in this section requires the commission to alter any exemption from provisions regulating hours of work that was contained in any valid wage order in effect in 1997." Since the sentence contains two references to "this section," it cannot be understood without a brief review of section 515 as a whole.

As amended in 1999, Labor Code section 515 contains provisions codifying aspects of the exemption for executive, administrative, and professional employees that were traditionally found solely in IWC wage orders. Thus, subdivision (a) authorizes this exemption "provided that the employee is primarily engaged in the duties that meet the test of the exemption" and subdivision (e) sets forth the traditional definition of the term "primarily" as meaning "more than one-half of the employee's worktime." Other provisions in subdivision (a) change, or authorize changes to, the exemption for executive, administrative, and professional employees. The minimum remuneration level to qualify for the exemption is raised to "a monthly salary equivalent to no less than two times the state minimum wage for full-time employment," defined in subdivision (c) as 40 hours per week, and the IWC is authorized to review "duties that meet the test of the exemption" and to adopt appropriate regulations pertaining to these duties.

Subdivision (b)(1) of Labor Code section 515 contains a separate authorization for the IWC to establish "exemptions to hours of work requirements . . . where it finds that hours or conditions of labor may be prejudicial to the health or welfare of employees in any occupation, trade, or industry." Other provisions in section 515 have no possible relevance to the matter at issue in

this appeal, i.e., the continued viability of the motor carrier exemption in IWC wage orders. (See § 515, subds. (d) [pertaining to the calculation of overtime for salaried employees] and (f) [pertaining to registered nurses].)

This review of Labor Code section 515 makes it readily apparent that the first sentence contains nothing that might affect the validity of the motor carrier exemption in IWC wage orders. The motor carrier exemption is contained in a "valid wage order in effect in 1997." The IWC is not required to alter any exemption in a valid 1997 wage order, except to the extent that it is directed to review the exemption for executive, administrative, and professional employees and to create additional exemptions based on "health or welfare of employees"—both matters having no relation to the motor carrier exemption. .

The issue therefore can be narrowed to the second sentence of Labor Code section 515, subdivision (b)(2), which provides: "Except as otherwise provided in this division, the commission may review, retain, or eliminate any exemption from provisions regulating hours of work that was contained in any valid wage order in effect in 1997."

Appellants argue that the introductory clause in the sentence abrogates the motor carrier exemption. Labor Code section 510 states a general rule regarding payment of overtime compensation and contains no reference to the motor carrier exemption. Since section 510 is within "this division," they contend that it comes within the scope of the phrase "[e]xcept as otherwise provided," and the IWC is thus barred from retaining the motor carrier exemption, even though it was contained in a valid 1997 wage order.

We think it is more reasonable to read the introductory clause as referring to those statutory exemptions from the general rule of overtime compensation that are found in the division. The scope of the introductory clause then would be no broader than that of the principal clause. The division in fact contains a number of specific statutory exemptions to the general rule of overtime compensation stated in Labor Code section 510. (See, e.g., §§ 511 [alternative workweeks], 514 [collective bargaining agreement], 554 [emergency work, rail carriers, agriculture], and 1182.4 [camp employees].) It is reasonable to suppose that, while recognizing the IWC's power to "review, retain, or eliminate any exemption," the Legislature intended to make clear that this power extended to nonstatutory exemptions in wage orders and did not affect statutory exemptions in the division.

As quasi-legislative regulations, the wage orders are to be construed in accordance with the ordinary principles of statutory interpretation. (See

*Bell v. Farmer Ins. Exchange, supra,* 87 Cal.App.4th 805, 811-812.)
 In statutory construction, the courts have long recognized a distinction between specific statutes and general ones. (*Rusheen v. Drews* (2002) 99 Cal.App.4th 279, 286 [120 Cal.Rptr.2d 769].) The sentence at issue concerns the IWC's power to create specific exceptions from the general rule of overtime compensation. It is entirely reasonable to read the reference to "this division" in the introductory clause, as referring to similar specific statutory exemptions found in the division.

 The courts are not justified in reading a term in the most inclusive sense when to do so would be contrary to legislative intent. (*Levy v. Superior Court* (1940) 15 Cal.2d 692, 698 [104 P.2d 770, 129 A.L.R. 956].) In the case at bar, our interpretation of legislative intent is supported by fundamental principles of statutory interpretation. First, "[i]t is a maxim of statutory construction that 'Courts should give meaning to every word of a statute if possible, and should avoid a construction making any word surplusage.' [Citation.]" (*Reno v. Baird* (1998) 18 Cal.4th 640, 658 [76 Cal.Rptr.2d 499, 957 P.2d 1333].) If the "except as otherwise provided in this division" language in the second sentence of Labor Code section 515 subdivision (b)(2), incorporates by reference the general rule of section 510, it is difficult to assign any meaning to the principal clause of the sentence. The IWC cannot "review, retain, or eliminate any exemption from provisions regulating hours of work" if it is "otherwise provided" that a general rule without exceptions applies.

 Secondly, appellants' argument "runs counter to the rule regarding repeal by implication. '[A]ll presumptions are against a repeal by implication. [Citations.]' [Citation.] Absent an express declaration of legislative intent, we will find an implied repeal 'only when there is no rational basis for harmonizing the two potentially conflicting statutes [citation], and the statutes are "irreconcilable, clearly repugnant, and so inconsistent that the two cannot have concurrent operation." ' [Citation.]" (*Garcia v. McCutchen* (1997) 16 Cal.4th 469, 476-477 [66 Cal.Rptr.2d 319, 940 P.2d 906].) The rule applies with particular force in the case of the motor vehicle exemption which is derived from a long-standing statutory scheme, found in both state and federal law, that reflects the peculiar circumstances of the trucking industry. It should not be inferred that the Legislature intended to repeal the exemption without an express declaration of intent.

Appellant's interpretation would call into question an array of other unspecified provisions in IWC wage orders. For example, the wage orders contain a standard provision exempting "employees directly employed by

the State or any county, incorporated city or town or other municipal corporation . . . ." (E.g., Cal. Code Regs., tit. 8, § 11090, subd. 1(B).) This exemption also lies outside the general rule of Labor Code section 510. It would indeed be "an absurd result, . . . inconsistent with apparent legislative intent" to interpret otherwise provided language in section 515, subdivision (b)(2) as calling for a comprehensive revision of exemptions in IWC wage orders. (*People v. Cruz* (1996) 13 Cal.4th 764, 783 [55 Cal.Rptr.2d 117, 919 P.2d 731].)

As we have seen, the Act codifies certain provisions in wage orders and alters other provisions but does not expressly address other broad areas of IWC regulations. "[O]ur duty is to harmonize [statutes] if reasonably possible." (*Broughton v. Cigna Healthplans* (1999) 21 Cal.4th 1066, 1086 [90 Cal.Rptr.2d 334, 988 P.2d 67].) This duty obliges us to affirm, to the extent possible, the integrity of both the Act and the IWC regulations as part of a single scheme of regulation. An implied repeal of IWC regulations by the Act would plainly be inconsistent with this duty to harmonize separate legislative enactments.[4]

We read the second sentence in Labor Code section 515, subdivision (b)(2) as expressing a legislative intent to leave undisturbed the exemptions from "provisions regulating hours of work . . . contained in any valid wage order in effect in 1997." The motor carrier exemption was one of the exemptions found in a valid 1997 wage order. Accordingly, the IWC had power to retain it and it has in fact done so. The most recent version of wage order No. 9, order 9-2001, effective January 1, 2001, and updated January 1, 2002, retains the motor carrier exemption in subdivision 3(L).[5]

Appellants do not contest that Overnite is a motor carrier or that its drivers are subject to 49 Code of Federal Regulations parts 395.1 to 395.13 (2001) and California Code of Regulations, title 13, subchapter 6.5. Therefore, we conclude that appellants come within the motor carrier exemption of wage order No. 9, and the trial court properly sustained without leave to amend Overnite's demurrer to the complaint on the ground that appellants are exempt from the coverage of the statutes and regulations alleged to have been violated.

---

[4]Similarly, we reject appellants' argument that the motor vehicle exemption was intended to apply only to the IWC regulations because the regulatory language refers to "the provisions of this section," i.e., the wage order. Such an interpretation would create separate and conflicting spheres of regulation by the IWC and the Legislature.

[5]See IWC Web site at <http://www.dir.ca.gov/iwc> (as of Jan. 9, 2003).

## Disposition

The judgment is affirmed.

Marchiano, P. J., and Stein, J., concurred.

On February 3, 2003, the opinion was modified to read as printed above.