[No. B182625. Second Dist., Div. Four. Apr. 7, 2006.]

DOUGLAS S. BEARDEN et al., Plaintiffs and Appellants, v.
U.S. BORAX, INC., Defendant and Respondent.

## COUNSEL

Neil M. Herring and Robert D. Newman for Plaintiffs and Appellants.

Ogletree, Deakins, Nash, Smoak & Stewart, Scott J. Witlin and Dominick C. Capozzola for Defendant and Respondent.

OPINION

EPSTEIN, P. J.—Six mine workers appeal from an order dismissing their complaint based on their employer's failure to allow a second meal break for the 12-hour shifts they were working. A statute requires that two meal breaks be allowed for shifts of that length. But an order of the Industrial Welfare Commission (IWC) exempts employees covered by a collective bargaining agreement. The principal issue before us concerns the validity of that order. We find that the exemption contravenes the statute and is invalid.

We also reject the employer's argument that the collective bargaining agreement between the employer and their employees' union requires that the employees arbitrate these claims. The parties raise an issue as to the retroactive application of our decision invalidating the IWC order. As we shall explain, except for application of Labor Code section 226.7, that issue must be litigated on remand. We also determine that the IWC and plaintiffs' union are not indispensable parties to this litigation.

## FACTUAL AND PROCEDURAL SUMMARY

"In determining whether plaintiffs properly stated a claim for relief, our standard of review is clear: ' "We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. [Citation.] We also consider matters which may be judicially noticed." [Citation.] Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context. [Citation.] When a demurrer is sustained, we determine whether the complaint states facts sufficient to constitute a cause of action. [Citation.] And when it is sustained without leave to amend, we decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm. [Citations.] The burden of proving such reasonable possibility is squarely on the plaintiff.' (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318 [216 Cal.Rptr. 718, 703 P.2d 58]; see also *McCall v. PacifiCare of Cal., Inc.* (2001) 25 Cal.4th 412, 415 [106 Cal.Rptr.2d 271, 21 P.3d 1189] [noting that our review is de novo].)" (*Zelig v. County of Los Angeles* (2002) 27 Cal.4th 1112, 1126 [119 Cal.Rptr.2d 709, 45 P.3d 1171].)

Plaintiffs are employees of U.S. Borax, Inc. (Borax), at its open pit mine operations in Boron, California. They allege that they are required to work 12.5 consecutive hours for each shift, but were given only one 30-minute meal break per shift. They sued Borax for denial of rest periods and meal

periods mandated by Labor Code sections 226.7 and 512, subdivision (a),[1] and by IWC Order No. 16-2001 regulating wages, hours and working conditions for certain on-site occupations in the construction, drilling, logging and mining industries. (Cal. Code of Regs., tit. 8, § 11160, hereafter the Wage Order or Order.) They also sued for failure to pay wages due upon termination and for unfair business practices in violation of Business and Professions Code section 17200. Plaintiffs sought statutory penalties, unpaid wages, injunctive relief, and attorney fees and costs.

Borax removed the case to the United States District Court on the basis of federal preemption. That court adjudicated the first cause of action, which was for denial of rest periods, on the basis of preemption, and remanded the remainder of the causes of action to the Los Angeles Superior Court. On remand, Borax demurred to the complaint. It argued that the meal period exception in the Wage Order relieves it of the obligation to provide a second meal break, that the Order does not apply to plaintiffs because their employment is governed by a collective bargaining agreement, and alternatively, that under the terms of the collective bargaining agreement, plaintiffs' claims must be arbitrated. Borax also argued that the union representing plaintiffs is an indispensable party.

Plaintiffs opposed the demurrer on the grounds that the IWC exceeded its authority in adopting the Wage Order provision exempting employees covered by collective bargaining agreements from the meal period requirements of section 512. (Wage Order, 10(E).) They also argued that the meal period claims need not be arbitrated. The trial court sustained the demurrer without leave to amend and entered final judgment in favor of Borax. Plaintiffs filed a timely notice of appeal. Service was made on the California Attorney General pursuant to Business and Professions Code section 17209 and California Rules of Court, rule 44.5(a)(1).

## DISCUSSION

### I

We first consider whether the IWC exceeded its authority in adopting section 10(E) of the Wage Order, which exempts employees covered by qualifying collective bargaining agreements from meal period requirements. We begin with a brief review of the statutory scheme.

The IWC was a five-member appointive board established by the Legislature in 1913, authorized to formulate wage orders governing employment in

---

[1] All statutory references are to the Labor Code unless otherwise indicated.

California.[2] (*Collins v. Overnite Transportation Co.* (2003) 105 Cal.App.4th 171, 174 [129 Cal.Rptr.2d 254] (*Collins*).) In 1999, in response to the IWC's elimination of daily overtime rules in certain industries, the Legislature passed and the Governor signed Assembly Bill No. 60 (1999–2000 Reg. Sess.), the Eight-Hour-Day Restoration and Workplace Flexibility Act of 1999. (Stats. 1999, ch. 134, § 14 (the Act).) Among other things, this legislation restored the eight-hour workday (§ 510) and mandated that the IWC conduct public hearings and adopt consistent wage orders (§ 517, subd. (a)), including orders pertaining to meal and rest periods (§ 516). (See *National Steel and Shipbuilding Co. v. Superior Court* (2006) 135 Cal.App.4th 1072, 1082 [38 Cal.Rptr.3d 253] (*National Steel*); *Collins, supra*, 105 Cal.App.4th at p. 176.) The Act established a new statutory scheme governing hours of labor and overtime compensation for all industries and occupations. (*Collins, supra*, 105 Cal.App.4th at p. 176.)

The Legislature enacted two provisions relating to meal periods. The first, section 512, was enacted in 1999. (Stats. 1999, ch. 134.) In pertinent part, it provides: "(a) An employer may not employ an employee for a work period of more than five hours per day without providing the employee with a meal period of not less than 30 minutes . . . . An employer may not employ an employee for a work period of more than 10 hours per day without providing the employee with a second meal period of not less than 30 minutes, except that if the total hours worked is no more than 12 hours, the second meal period may be waived by mutual consent of the employer and the employee only if the first meal period was not waived."

Later in the 1999–2000 Regular Session, additional legislation was introduced to strengthen the enforcement of existing wage and hour standards contained in current statutes and wage orders. (Assem. Com. on Labor and Employment, Analysis of Assem. Bill No. 2509 (1999–2000 Reg. Sess.) as introduced Feb. 24, 2000, p. 7.) Section 226.7 was enacted as part of that legislation (effective on Jan. 1, 2001). It states: "(a) No employer shall require any employee to work during any meal or rest period . . . . [¶] (b) If an employer fails to provide an employee a meal period or rest period . . . , the employer shall pay the employee one additional hour of pay at the employee's regular rate of compensation for each work day that the meal or rest period is not provided."

The IWC adopted Wage Order No. 16-2001, effective January 1, 2001, governing employees in construction, drilling, logging, and mining. (Cal. Code of Regs., tit. 8, § 11160.) Section 10 of the Wage Order governs meal periods.

---

[2] Although the IWC was defunded by the Legislature effective July 1, 2004, its wage orders remain in effect. (*Huntington Memorial Hospital v. Superior Court* (2005) 131 Cal.App.4th 893, 902, fn. 2 [32 Cal.Rptr.3d 373].)

Subdivisions (A) and (B) track the language of section 512, subdivision (a): "(A) No employer shall employ any person for a work period of more than five (5) hours without a meal period of not less than 30 minutes, except that when a work period of not more than six (6) hours will complete the day's work the meal period may be waived by mutual consent of employer and employee. (See Labor Code Section 512.) [¶] (B) An employer may not employ an employee for a work period of more than ten (10) hours per day without providing the employee with a second meal period of not less than 30 minutes, except that if the total hours worked is no more than 12 hours, the second meal period may be waived by mutual consent of employer and employee only if the first meal period was not waived. (See Labor Code Section 512.)"

Borax relies on section 10(E) of the Wage Order in arguing that its employees are exempt from the second meal period requirement: "Collective Bargaining Agreements. Subsections (A), (B), and (D) of Section 10, Meal Periods, shall not apply to any employee covered by a valid collective bargaining agreement if the agreement expressly provides for the wages, hours of work, and working conditions of the employees, and if the agreement provides premium wage rates for all overtime hours worked and a regular hourly rate of pay for those employees of not less than 30 percent more than the state minimum wage."

Plaintiffs argue that the IWC exceeded its authority in enacting section 10(E) because it creates an additional exemption for employees governed by collective bargaining agreements, beyond the exemptions expressly included in section 512. Section 512 provides only two exceptions to the requirement that employees who work more than 10 hours per shift be given two 30-minute meal periods. Neither applies here. One allows waiver of the second meal period by mutual consent of the employer and employee. (§ 512, subd. (a).) It is undisputed that plaintiffs worked 12.5 hour shifts and did not consent to waive their second meal period. The other exempts workers in the wholesale baking industry. (§ 512, subd. (c).) (There is now a third provision specifically applicable to employees in the motion picture and broadcasting industries.)

■ "[S]tatutes governing conditions of employment are construed broadly in favor of protecting employees." (*National Steel, supra,* 135 Cal.App.4th at p. 1084; *Lusardi Construction Co. v. Aubry* (1992) 1 Cal.4th 976, 985 [4 Cal.Rptr.2d 837, 824 P.2d 643].) We construe wage orders, as quasi-legislative regulations, in accordance with the standard rules of statutory interpretation. (*Collins, supra,* 105 Cal.App.4th 171, 178–179.)

■ The authority of an administrative agency to adopt regulations is limited by the enabling legislation. "[A]n administrative regulation must 'be

within the scope of authority conferred and in accordance with standards prescribed by other provisions of law.' (Gov. Code, § 11342.1.) 'Whenever by the express or implied terms of any statute a state agency has authority to adopt regulations to implement, interpret, make specific or otherwise carry out the provisions of the statute, no regulation adopted is valid or effective unless consistent and not in conflict with the statute and reasonably necessary to effectuate the purpose of the statute.' (Gov. Code, § 11342.2.)" (*Agnew v. State Bd. of Equalization* (1999) 21 Cal.4th 310, 321 [87 Cal.Rptr.2d 423, 981 P.2d 52] (*Agnew*).)

"Even apart from these statutory limits, it is well established that the rulemaking power of an administrative agency does not permit the agency to exceed the scope of authority conferred on the agency by the Legislature. (*California Emp. Com. v. Kovacevich* (1946) 27 Cal.2d 546 [165 P.2d 917].) 'A ministerial officer may not . . . under the guise of a rule or regulation vary or enlarge the terms of a legislative enactment or compel that to be done which lies without the scope of the statute and which cannot be said to be reasonably necessary or appropriate to subserving or promoting the interests and purposes of the statute.' (*First Industrial Loan Co. v. Daugherty* (1945) 26 Cal.2d 545, 550 [159 P.2d 921].) And, a regulation which impairs the scope of a statute must be declared void. (*Association For Retarded Citizens v. Department of Developmental Services* (1985) 38 Cal.3d 384, 391 [211 Cal.Rptr. 758, 696 P.2d 150]; *Morris v. Williams* (1967) 67 Cal.2d 733, 748 [63 Cal.Rptr. 689, 433 P.2d 697].)" (*Agnew, supra*, 21 Cal.4th at p. 321; *Colmenares v. Braemar Country Club, Inc.* (2003) 29 Cal.4th 1019, 1029 [130 Cal.Rptr.2d 662, 63 P.3d 220].)

■ We apply the standard for assessment of the validity of a formal regulation stated by our Supreme Court in *Agnew*: " '[T]he judicial function is limited to determining whether the regulation (1) is "within the scope of the authority conferred" (Gov. Code, [former] § 11373) and (2) is "reasonably necessary to effectuate the purpose of the statute." (Gov. Code, § 11374).' (*Agricultural Labor Relations Bd. v. Superior Court* (1976) 16 Cal.3d 392, 411 [128 Cal. Rptr. 183, 546 P.2d 687], fn. omitted.)" (*Agnew, supra*, 21 Cal.4th at p. 322.) While we respect an administrative agency's construction of a statute in adopting a regulation, we " 'must . . . independently judge the text of the statute.' " (*Ibid.*)

Here we are asked to determine whether the IWC exceeded its authority in creating a meal period exemption not codified in section 512. As we have seen, the Legislature expressly created two exemptions to the meal period requirement in enacting section 512. Plaintiffs invoke the general rule that "where exceptions to a general rule are specified by statute, other exceptions are not to be presumed unless a contrary legislative intent can be discerned."

(*Mountain Lion Foundation v. Fish & Game Com.* (1997) 16 Cal.4th 105, 116 [65 Cal.Rptr.2d 580, 939 P.2d 1280].) "Under the maxim of statutory construction, *expressio unius est exclusio alterius*, if exemptions are specified in a statute, we may not imply additional exemptions unless there is a clear legislative intent to the contrary. (*Wildlife Alive v. Chickering* (1976) 18 Cal.3d 190, 195 [132 Cal.Rptr. 377, 553 P.2d 537].)" (*Sierra Club v. State Bd. of Forestry* (1994) 7 Cal.4th 1215, 1230 [32 Cal.Rptr.2d 19, 876 P.2d 505].)

Borax argues that the legislative history of the statute supports the regulatory exception. We are not persuaded.

█ First, Borax cites section 1200: "In every prosecution for violation of any provision of this chapter, . . . the standard conditions of labor fixed by the commission [IWC] shall be presumed to be reasonable and lawful." This raises a presumption. "A presumption 'established to implement some public policy other than to facilitate the determination of the particular action in which the presumption is applied, such as the policy in favor of establishment of a parent and child relationship, the validity of marriage, the stability of titles to property, or the security of those who entrust themselves or their property to the administration of others' shifts the burden of proof. ([Evid. Code,] §§ 605, 606.)" (*Buzgheia v. Leasco Sierra Grove* (1997) 60 Cal.App.4th 374, 390 [70 Cal.Rptr.2d 427].)

█ The presumption of section 1200 implements the public policy in favor of the validity of IWC work orders, and thus constitutes a presumption shifting the burden of proof. (Evid. Code, § 605.) It places the burden of proof as to the nonexistence of the presumed fact on the party against whom the presumption operates. (*Haycock v. Hughes Aircraft Co.* (1994) 22 Cal.App.4th 1473, 1491 [28 Cal.Rptr.2d 248].) Plaintiffs satisfied their burden by establishing that Wage Order section 10(E) conflicts with section 512 by creating a new exception not authorized by the Legislature. The presumption of section 1200 is overcome.

Next, Borax invokes the authority delegated by the Legislature to the IWC to adopt standard conditions of labor through wage orders. (§ 517.) Specifically, Borax cites statutes authorizing the adoption of meal period orders, beginning with section 516. Borax cites the former version of section 516, before it was amended in 2000, instead of the current version. The impact of the 2000 amendment is significant. The former version provided: "*Notwithstanding any other provision of law*, the Industrial Welfare Commission may adopt or amend working condition orders with respect to break periods, meal periods, and days of rest for any workers in California consistent with the health and welfare of those workers." (Italics added.)

In 2000, the Legislature amended the introductory clause of section 516 so that it now reads: *"Except as provided in Section 512 . . . ."* (Stats. 2000, ch. 492, § 4, italics added.) The Senate third reading analysis for Senate Bill No. 88, the legislative vehicle for the amending statute, states: "This bill clarifies two provisions of the Labor Code enacted in Chapter 134. Labor Code Section 512 codifies the duty of an employer to provide employees with meal periods. Labor Code Section 516 establishes the authority of IWC to adopt or amend working condition orders with respect to break periods, meal periods, and days of rest. *This bill provides that IWC's authority to adopt or amend orders under Section 516 must be consistent with the specific provisions of Labor Code Section 512 . . . ."* (Italics added.) Senate Bill No. 88 (1999–2000 Reg. Sess.) was an urgency statute which took effect immediately in September 2000. (Stats. 2000, ch. 492, § 5.)

As we have seen, section 516 specifically excepts the requirements of section 512 from this grant of authority to the IWC. Plaintiffs argue that Borax cannot establish that a work order exempting employees from the second meal period requirement of Wage Order section 10 (A) is "consistent with the health and welfare of those workers" as required by section 516. In response, Borax asserts: "[I]n view of the fact that meal periods usually are not paid, arguments about whether mandatory meal periods truly promote the health and welfare of employees can go both ways. For instance, many employees would prefer to spend the additional time pursuing other interests. Moreover, the IWC, by exempting union employees, is leaving the employees' protection in the hands of the unions, which are much better suited than the IWC to determine what contractual provisions are in the best interests of the employees' health and welfare." No support or authority is cited for these assertions.

■ We conclude that section 516, as amended in 2000, does not authorize the IWC to enact wage orders inconsistent with the language of section 512.

Borax also argues that section 10(E) of the Wage Order is authorized by section 515, subdivision (b)(1). Section 515, subdivision (a) states: "The Industrial Welfare Commission may establish exemptions from the requirement that an overtime rate of compensation be paid pursuant to Section 510 and 511 for executive, administrative, and professional employees, provided that the employee is primarily engaged in the duties that meet the test of the exemption, customarily and regularly exercises discretion and independent judgment in performing those duties, and earns a monthly salary equivalent to no less than two times the state minimum wage for full-time employment. . . ." Subdivision (b)(1) provides: "The commission may establish additional exemptions to hours of work requirements under this division where it finds that hours or conditions of labor may be prejudicial to the health or welfare of employees in any occupation, trade, or industry. This paragraph shall become inoperative on January 1, 2005."

Borax has not demonstrated how exempting unionized miners from meal period requirements is necessary because the hours or conditions of labor may be prejudicial to the health or welfare of employees as required by section 515, subdivision (b)(1). Borax cites no finding by the IWC or any other authority that would satisfy this requirement.

Finally, Borax cites various provisions of the Labor Code conferring authority on the IWC. From these it argues: "Given all this authority, it cannot be disputed that the IWC had the power to adopt Section 10(E), in which the IWC excluded from the meal period requirements of Wage Order 16-2001 employees covered by collective bargaining agreements that meet certain minimum standards." We have examined the cited provisions and disagree with Borax's conclusion. Sections 70 through 74 establish the IWC and delineate its membership and personnel. Section 74 specifically gives the Chief of the Division of Labor Standards and Enforcement authority to issue subpoenas and to administer oaths and examine witnesses for the purpose of enforcing IWC orders and the Labor Code, and section 512.5 specifically allows the IWC to exempt a public employee who operates a commercial motor vehicle from orders relating to meal periods and other standards. Rather than supporting Borax's position, this statute reflects a legislative decision to allow exemptions from the meal period requirements only in particular circumstances.

Borax also cites section 517. That statute authorizes the IWC to adopt wage, hour, and working conditions orders and to conduct reviews of these issues in specified industries. It does not contravene the plain language of section 516. Finally, Borax cites sections 1173 through 1203. These provisions of division 2, part 4, chapter 1 of the Labor Code relate to persons employed in any occupation or industry except outside salesmen and participants in a national service program. (§ 1171.) Citing section 1173, Borax argues the IWC has been given constitutional and legislative authority "to create exemptions and make policy-decisions about maximum working hours and the standard conditions of labor." Section 1173 states in pertinent part: "The commission may, upon its own motion or upon petition, amend or rescind any order or portion of any order or adopt an order covering any occupation, trade, or industry not covered by an existing order pursuant to this chapter."

In *California Labor Federation v. Industrial Welfare Com.* (1998) 63 Cal.App.4th 982 [74 Cal.Rptr.2d 397], the court upheld IWC orders eliminating the eight-hour workday in certain industries, finding no conflict with relevant Labor Code provisions. (63 Cal.App.4th at pp. 991–992.) In so holding, the court cited section 1173 as authorizing the IWC to amend its wage orders. (63 Cal.App.4th at p. 991.) The Court of Appeal rejected arguments based on the Governor's veto of legislation overturning the IWC action. In

reaching that conclusion, the court said it could not "overturn the IWC action as a result of events short of validly enacted legislation . . . ." (*Id.* at p. 995.)

We are not concerned in this case with the power of the IWC to amend or rescind its wage orders under section 1173, as the court was in *California Labor Federation v. Industrial Welfare Com., supra,* 63 Cal.App.4th 982. Instead, we are presented with a new and broad regulation which would exempt legislatively mandated meal period requirements created by the IWC without specific legislative authorization. Our review of the wage and hour provisions of the Labor Code makes it plain that the Legislature exercised its power to create exceptions to the requirements where it thought best. The broad powers granted to the IWC do not extend to the creation of additional exemptions from the meal period requirement beyond those provided by the Legislature. This is especially true in light of the express language of section 516, which we have discussed. We conclude that the IWC exceeded its authority in adopting section 10(E) of the Wage Order and that the exemption therefore is invalid. (*Agnew, supra,* 21 Cal.4th at p. 321; *Colmenares v. Braemar Country Club, Inc., supra,* 29 Cal.4th at p. 1029.) In light of this conclusion, we need not and do not reach either the equal protection arguments made by plaintiffs nor their arguments challenging the sufficiency of the IWC's statement of the basis for section 10(E).

II

Borax contends that plaintiffs must pursue their meal period claims through arbitration, under section 10(F) of the Wage Order. That provision states: "If an employer fails to provide an employee a meal period in accordance with the applicable provisions of this Order, the employer shall pay the employee one (1) hour of pay at the employee's regular rate of compensation for each workday that the meal period is not provided. *In cases where a valid collective bargaining agreement provides [a] final and binding mechanism for resolving disputes regarding enforcement of the meal period provisions, the collective bargaining agreement will prevail.*" (Italics added.)

Borax cites article IV of the collective bargaining agreement, which sets out the grievance and arbitration procedure. A grievance is defined as "any dispute between the Company . . . and the Union or any member of the bargaining unit, or both, . . . over the interpretation or application of the terms of the [collective bargaining] Agreement." Step 3 of the grievance procedure allows the union to request arbitration if the dispute cannot be resolved by a grievance committee. Step 4 of the grievance procedure sets out the provisions for arbitration of disputes.

The parties dispute the validity of Wage Order section 10(F). We need not resolve that issue because we find merit in plaintiffs' alternative argument that

the collective bargaining agreement does not come within section 10(F). The reason is that it does not provide a "final and binding mechanism" for resolving disputes over the meal period requirements. Plaintiffs argue that their claims against Borax are based on statute, rather than on the terms of the collective bargaining agreement. As we have seen, the grievance procedure only applies to disputes regarding the collective bargaining agreement itself. In addition, step 4, subdivision (c) of the grievance procedure states that the parties shall promptly comply with the arbitration award "provided the decision is limited to the issue or issues submitted and is covered by the terms of this Agreement." Subdivision (e) of step 4 provides that the arbitrator has no authority to add to, delete from, or alter in any respect any of the terms of the agreement.

Borax asserts that the collective bargaining agreement provides for daily meal periods and for a remedy if the meal is missed. It cites section 13(c) of the agreement for the proposition that the parties have agreed to arbitrate meal period disputes. That provision addresses workers on "straight shifts" of 8.5 hours. The language of section 13(c) quoted by Borax states: "Employees on such shifts shall be at their respective work places at the beginning and end of the shift. They will be allowed a half hour for lunch ordinarily scheduled to begin at 11:30 A.M. for day shift employees and approximately midshift for swing and graveyard shifts and they shall be at their respective working places at the beginning and end of such lunch period. Such lunch period shall be considered the regularly scheduled period . . . ."

It is undisputed that the plaintiffs work 12.5-hour shifts, entitling them to two meal periods, rather than the one 8.5-hour shift addressed in section 13(c) of the collective bargaining agreement. Section 13(d), not cited by Borax, does address 12-hour shifts. But while it addresses overtime, holiday pay, vacation, sick leave, and benefit eligibility, vesting and accrual, it is silent regarding meal period for workers on 12-hour shifts. Borax cites nothing in the collective bargaining agreement that expressly relates to the claims made by plaintiffs here, and we find nothing addressing the second-meal-period requirements of section 512.

*Cicairos v. Summit Logistics, Inc.* (2005) 133 Cal.App.4th 949 [35 Cal.Rptr.3d 243] (*Cicairos*) is instructive. In that case, unionized truck drivers sued their employer for violations of section 512 and IWC wage order provisions relating to meal periods and rest periods. The collective bargaining agreement provided for mandatory arbitration of any violation of the agreement. The parties disputed whether the plaintiffs were required to arbitrate their statutory claims.

▪ The *Cicairos* court concluded that plaintiffs were not required to arbitrate the statutory claims. "The United States Supreme Court 'has repeatedly made clear that arbitration may resolve statutory claims as well as those purely contractual *if the parties so intend . . . .*' (*Broughton v. Cigna Healthplans* (1999) 21 Cal.4th 1066, 1075 [90 Cal.Rptr.2d 334, 988 P.2d 67] [and Supreme Court cases collected therein], italics added.)" (*Cicairos, supra,* 133 Cal.App.4th at p. 959.) The court in *Cicairos* observed that the collective bargaining agreement did not contain a provision "whereby the plaintiffs agreed to arbitrate alleged violations of statutory rights." (*Ibid.*) It reasoned: "Arbitration is also not required simply because the provisions relating to meal periods and rest breaks in the collective bargaining agreement are almost identical or even more generous than under state law. Since minimum statutory labor standards are at issue here, the parties could not waive the required meal periods or rest breaks. [¶] Since statutory rights were at issue and there is no indication in the collective bargaining agreement of an intent to arbitrate statutory rights violations allegations, the plaintiffs were not required to first bring their claims to arbitration." (*Id.* at p. 960.)

We agree with the analysis of the *Cicairos* court. We are not cited to any provision of the collective bargaining agreement in which the plaintiffs agreed to arbitrate all claims of a Labor Code violation, or a category of claims that includes a departure from the meal break provision of section 512. As we have discussed, the collective bargaining agreement does not specifically address the second-meal-period requirement of that statute. Under these circumstances, we conclude that plaintiffs cannot be compelled to arbitrate their claims under Wage Order section 10(F).

## III

Borax also contends that in the event we find the Wage Order invalid as it applies to this case, we must apply our decision prospectively only. The reason asserted is that retroactive application would violate the right of Borax to due process under the Fourteenth Amendment of the United States Constitution.

▪ "As a general rule, judicial decisions are given retroactive effect, even if they represent a clear change in the law. (*Newman v. Emerson Radio Corp.* (1989) 48 Cal.3d 973, 978–979 [258 Cal.Rptr. 592, 772 P.2d 1059].) The exception is when considerations of fairness and public policy are so compelling in a particular case that, on balance, they outweigh the considerations that underlie the basic rule. (*Id.* at p. 983.) This exception applies in particular when a party justifiably has relied on the former rule. (*Ibid.*; *Smith v. Rae-Venter Law Group* (2002) 29 Cal.4th 345, 351 [127 Cal.Rptr.2d 516, 58 P.3d 367].)" (*Godinez v. Schwarzenegger* (2005) 132 Cal.App.4th 73, 91 [33 Cal.Rptr.3d 270].)

Several factors must be considered in determining whether a decision should be given retroactive application: "Particular considerations relevant to the retroactivity determination include the reasonableness of the parties' reliance on the former rule, the nature of the change as substantive or procedural, retroactivity's effect on the administration of justice, and the purposes to be served by the new rule. [Citations.]" (*Woods v. Young* (1991) 53 Cal.3d 315, 330 [279 Cal.Rptr. 613, 807 P.2d 455], quoted with approval in *Smith v. Rae-Venter Law Group*, *supra*, 29 Cal.4th at p. 372.)

■ Under these principles, the retroactive application of our holding that Wage Order section 10(E) is invalid necessarily involves factual and policy issues not before us on review of a judgment following the sustaining of the demurrer. With a single exception, we do not take a position at this time on the potential liability of Borax for violations of section 512 committed before the filing of this opinion. That matter must be initially addressed in the trial court, allowing the parties an opportunity to fully litigate the general rule of retroactivity and its exceptions. Nevertheless, the claim based on section 226.7 presents an issue of law that is fully developed in the case before us. Section 226.7 prohibits employers from requiring an employee to work during a meal or rest period mandated by an applicable order of the IWC. It also provides for a penalty where the employer fails to provide a meal or rest period in accordance with an applicable IWC order. The problem with plaintiffs' position is that there was no violation of an IWC *order*. Even though we hold that the exception of section 10(E) is invalid, it is part of the IWC order. Consequently, there is no basis for application of section 226.7.

## IV

Borax argues that we should not invalidate any provision of the Wage Order without first requiring that the IWC join in the lawsuit, citing federal authorities on the joinder of administrative agencies to defend interpretation of regulations. As we have noted, the Legislature defunded the IWC effective July 1, 2004. (*Huntington Memorial Hospital v. Superior Court*, *supra*, 131 Cal.App.4th at p. 902, fn. 2; IWC Web site <www.dir.ca.gov/IWC>, as of Apr. 7, 2006.) Borax does not address how IWC could be joined as a party under these circumstances.

In addition, Borax argues that on remand, plaintiffs' union is an indispensable party within the meaning of Code of Civil Procedure section 389. It claims that plaintiffs' request for injunctive relief requiring it to grant its mining employees all meal periods required by state law "invariably would affect the Union's rights under the CBA." We already have observed that Borax has not pointed out any provision of the collective bargaining agreement concerning the second meal requirement for employees working

more than 12 hours. We have found no such provision. Borax has not supported its assertion that the decision in this case would "invariably" affect the union's rights under the collective bargaining agreement. It has not demonstrated that plaintiffs' union is an indispensable party.

## DISPOSITION

The judgment is reversed. Plaintiffs are to have their costs on appeal.

Curry, J., and Willhite, J., concurred.