[No. B222807. Second Dist., Div. Seven. Oct. 7, 2010.]

RICHARD LAZARIN et al., Petitioners, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
TOTAL WESTERN, INC., Real Party in Interest.

1562

**COUNSEL**

Keller Grover, Eric A. Grover; Law Offices of Scot D. Bernstein, Scot Bernstein; Law Offices of Ellyn Moscowitz and Ellyn Moscowitz for Petitioners.

Altshuler Berzon and Scott A. Kronland for State Building and Construction Trades Council of California, AFL-CIO, as Amicus Curiae on behalf of Petitioners.

No appearance for Respondent.

Atkinson, Andelson, Loya, Ruud & Romo, Steven D. Atkinson, Scott K. Dauscher, Christopher S. Andre and Jennifer D. Cantrell for Real Party in Interest.

Littler Mendelson, Robert L. Zaletel, Tarun Mehta and Lindbergh Porter, Jr., for Timec Company, Inc., as Amicus Curiae on behalf of Real Party in Interest.

## Opinion

**PERLUSS, P. J.**—Three union-represented construction workers, Richard Lazarin, Gervis Quamina and Otis Skinner, sued their former employer, Total Western, Inc. (TWI), on behalf of themselves and a putative class of former and current nonexempt hourly employees of TWI providing onsite construction services at oil refineries, powerplants or other industrial facilities, alleging in part TWI had failed to provide second meal periods in the manner required by Labor Code section 512, subdivision (a),[1] and section 10(B) of Industrial Welfare Commission (IWC) wage order No. 16-2001 (Cal. Code Regs., tit. 8, § 11160) (wage order 16). In their fifth cause of action the workers seek damages for TWI's failure to pay premium wages required by section 226.7 to compensate its employees for the missed second meal periods. In their second cause of action the workers allege TWI's practice of failing to provide the required second meal periods constitutes an unfair and unlawful business practice in violation of Business and Professions Code section 17200 et seq.

Based on its understanding of the decision by Division Four of this court in *Bearden v. U.S. Borax, Inc.* (2006) 138 Cal.App.4th 429 [41 Cal.Rptr.3d 482] (*Bearden*), respondent Los Angeles Superior Court granted TWI's motion for summary adjudication as to the fifth cause of action, ruling the exemption from the second-meal-period provision for employees covered by certain collective bargaining agreements contained in wage order 16, section 10(E), was invalid but, because that exemption remains part of the wage order, TWI could not be liable for damages under section 226.7. The court denied TWI's motion for summary adjudication as to the second cause of action, concluding the workers had asserted a viable claim for unfair business practices based on the alleged violations of section 512, subdivision (a).

The superior court erred in applying *Bearden, supra*, 138 Cal.App.4th 429, which held the IWC had exceeded its statutory authority in adopting the exemption for union-represented employees contained in wage order 16, section 10(E), but gave its decision prospective effect only. The failure of an employer to provide second meal periods as required by section 512, subdivision (a), and wage order 16, section 10(B), is subject to an award of premium pay as specified in section 226.7. Accordingly, we grant the petition for writ of mandate filed by Lazarin, Quamina and Skinner and direct the court to vacate its order of February 11, 2010 granting TWI's motion for summary adjudication as to the fifth cause of action and to enter a new and different order denying that motion.

---

[1] Statutory references are to the Labor Code unless otherwise indicated.

## FACTUAL AND PROCEDURAL BACKGROUND

1. *The Wage and Hour Complaint*

On September 16, 2008 petitioners Lazarin, Quamina and Skinner filed an action for unfair business practices and Labor Code violations on behalf of themselves and a putative class of former and current nonexempt California employees of TWI. The complaint alleges TWI employs skilled pipefitters, electricians, welders, ironworkers and other nonexempt employees to perform services under the management and control of TWI at sites throughout California. Those skilled employees are covered by wage order 16, which applies to certain onsite occupations in the construction, drilling, logging and mining industries. Petitioners allege they typically worked five to seven days per week and at least 10 and up to 16 or more hours per day.

The complaint further alleges TWI failed to pay its employees double-time wages when they worked more than 12 hours in a day or more than eight hours on the seventh day in a workweek, failed to provide employees with a second uninterrupted 30-minute meal period when they worked more than 10 hours in a day, failed to provide its employees a third rest period when they worked more than 12 hours in a day and violated other provisions of California labor laws, including failing to provide complete and accurate itemized wage statements and failing to pay all wages due when an employee was discharged or quit. The complaint defined the proposed plaintiff class (which included five subclasses) as "[a]ll persons who are, have been, or were employed in California by [TWI] as non-exempt employees providing on-site construction services at a refinery, power plant, or other facility at any time from September 16, 2004 to the time of judgment in this action."

2. *TWI's Motions for Summary Adjudication*

    a. *The initial motion concerning claims for unpaid overtime and the existence of a qualifying collective bargaining agreement*

Section 514 provides that section 510, concerning overtime pay, and section 511, regarding alternative workweek schedules, do not apply to an employee covered by a valid collective bargaining agreement if that agreement provides certain minimum protections for the employee. Wage order 16, section 3(H), contains the same exclusion from the wage order's overtime provisions for onsite construction employees.

On October 5, 2009 the superior court granted TWI's motion for summary adjudication as to Lazarin, Quamina and Skinner's claims for unpaid overtime compensation (the first cause of action for unfair competition and fourth

cause of action under § 1194), finding at all relevant times TWI's employees, including petitioners, were covered by valid collective bargaining agreements that contained the required elements for the exemption specified in section 514 and wage order 16, section 3(H). Specifically, the court found as undisputed fact that beginning on January 1, 2001 TWI was a signatory to valid collective bargaining agreements with the International Union of Petroleum and Industrial Workers that expressly provided for the wages, hours and working conditions of TWI's employees; provided a regular hourly rate of pay not less than 30 percent more than the state minimum wage; specified a premium wage rate of time and one-half for all overtime hours worked (defined as hours worked in excess of 40 per payroll week or hours worked in excess of a regularly scheduled shift); and authorized TWI to establish daily work schedules of eight, nine, 10 or 12 hours without incurring overtime except when the hours worked were in excess of the regularly scheduled shift.

> b. *The motion directed to the claims for missed second meal periods*

Immediately after the court granted TWI's motion for summary adjudication regarding the claims for unpaid overtime compensation based on the exemption for employees covered by a qualifying collective bargaining agreement, TWI moved for summary adjudication as to the two claims based on missed second meal periods, noting wage order 16, section 10(E), provided the wage order's requirements regarding meal periods were likewise inapplicable to employees covered by qualifying collective bargaining agreements. Although TWI acknowledged the exemption contained in section 10(E) had been invalidated several years earlier in *Bearden, supra*, 138 Cal.App.4th 429, TWI argued the *Bearden* court had also held, notwithstanding its invalidity, the exemption "is part of the IWC order." (*Id.* at p. 443.) Accordingly, because section 226.7's premium pay provision applies only if an employer fails to afford a meal period "in accordance with an applicable order of the Industrial Welfare Commission," just as the employer in *Bearden*, U.S. Borax, was held not to have violated an IWC order and not to be liable for section 226.7 damages, it too could not be liable for such damages: "[E]ven though the exemption is invalid, it is still contained in Wage Order 16-2001. TWI is in compliance with the Wage Order as written."

In their opposition to the motion for summary adjudication, Lazarin, Quamina and Skinner emphasized wage order 16, section 10(E), had been invalidated in *Bearden, supra*, 138 Cal.App.4th 429 and insisted an invalid exemption cannot be the basis for excusing TWI from liability for its unlawful meal period practices. (Lazarin, Quamina and Skinner noted TWI did not contend the *Bearden* court had erred in invalidating the exemption

and had not presented any evidence regarding the factual bases for the claim TWI had failed to provide petitioners or other members of the putative class with a second, 30-minute uninterrupted meal period when they worked more than 10 hours in a day.) They also argued, even if their section 226.7 claim for damages was precluded, the unfair business practice cause of action, predicated on a violation of section 512, subdivision (a), and not wage order 16, section 10, survived.

       c.   *The superior court's order granting the motion as to the fifth cause of action*

    Following oral argument and supplemental briefing, on February 11, 2010 the court granted TWI's motion as to the fifth cause of action, based on alleged violations of wage order 16, section 10(B), and section 226.7, and denied the motion as to the second cause of action for unfair business practices. After quoting the applicable Labor Code sections and portions of wage order 16, including the exemption in section 10(E) for employees covered by a valid, qualifying collective bargaining agreement—and reiterating that it had previously determined TWI and its unionized employees had in place qualifying collective bargaining agreements—the court explained, "[t]he Bearden court found that Section 10(E) improperly creates an additional exception to the requirements of Labor Code § 512 beyond the specific exceptions the Legislature expressly included in the statute. . . . However, the Bearden court also held that the defendant could not be liable, as a matter of law for the penalties provided in Labor Code § 226.7 because the exemption is part of the Wage Order. . . . The invalid provision remains part of the Wage Order today. . . . [W]hile it can be said that this defendant is not in the same position as U.S. Borax because this defendant has the benefit of notice that Section 10(E) is invalid, it cannot be ignored that this defendant also has notice that employers will not be held liable for violation of the Wage Order because Section 10(E) remains part of the Wage Order. The employer is not in a position to predict which part of a decision will apply to it and which will not. Therefore, the problem for the plaintiffs here is the same problem the Bearden plaintiffs faced: '. . . there was no violation of an IWC order.' "

    With respect to the unfair business practice claim, however, the court ruled, even if TWI has no liability under wage order 16, section 10(E), Lazarin, Quamina and Skinner have alleged a violation of section 512 itself as a predicate for their claim. "Nothing about the court's holding in Bearden prevents a UCL claim based on violations of Labor Code § 512."

    Acknowledging "the paradox inherent in the ruling" that wage order 16, section 10(E), is invalid but nonetheless protects employers from liability for failing to provide required meal periods, the court indicated its belief that

immediate appellate review of its ruling on the fifth cause of action would materially advance the conclusion of the litigation. (Code Civ. Proc., § 166.1.)

### 3. *The Instant Petition*

On March 8, 2010 Lazarin, Quamina and Skinner petitioned this court for a writ of mandate compelling respondent superior court to vacate its order granting real party in interest TWI's motion for summary adjudication as to their fifth cause of action and to enter a new order denying the motion. In their petition Lazarin, Quamina and Skinner argue the invalid exemption contained in wage order 16, section 10(E), should have been severed from the valid portions of the wage order and, in any event, not allowing workers covered by collective bargaining agreements to recover premium pay as compensation for the failure to provide required second meal periods impermissibly discriminates against union members and violates the National Labor Relations Act (29 U.S.C. § 151 et seq.).

After requesting and receiving an informal opposition to the petition, on April 22, 2010 we issued an alternative writ of mandate, directing the superior court to vacate its February 11, 2010 order granting TWI's motion for summary adjudication as to the fifth cause of action or, in the alternative, to show cause in this court why a peremptory writ of mandate should not issue requiring it to do so.[2] On May 24, 2010 TWI filed its return by answer to the petition for writ of mandate, arguing the court properly ruled petitioners could not state a claim for damages under section 226.7 pursuant to the holding in *Bearden, supra*, 138 Cal.App.4th 429, which it was obligated to follow. TWI also argued the *Bearden* court erred in holding the IWC had exceeded its authority when it adopted the exemption in wage order 16, section 10(E), for workers covered by collective bargaining agreements. On June 7, 2010 Lazarin, Quamina and Skinner filed a reply to the return.[3]

---

[2] On April 22, 2010 we also granted the request of the State Building and Construction Trades Council of California, AFL-CIO, to file a brief as amicus curiae in support of the petition for writ of mandate. On June 21, 2010 we granted the application of Timec Company, Inc., for leave to file an amicus curiae brief in support of TWI.

[3] Together with their briefing in this writ proceeding, petitioners and TWI have filed several motions for judicial notice, primarily consisting of materials reflecting the legislative history of the Labor Code provisions at issue in this case. No opposition to those motions was filed. We previously granted petitioners' motion filed on June 7, 2010. We now grant TWI's motion filed May 24, 2010 and petitioners' motion filed July 6, 2010.

## DISCUSSION

### 1. *Standard of Review*

A motion for summary adjudication is properly granted only when "all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Code Civ. Proc., § 437c, subds. (c), (f)(1).) We review a grant of summary adjudication de novo and decide independently whether the facts not subject to triable dispute warrant judgment for the moving party as a matter of law. (*Intel Corp. v. Hamidi* (2003) 30 Cal.4th 1342, 1348 [1 Cal.Rptr.3d 32, 71 P.3d 296].)

■ The proper interpretation of a statute and the application of the statute to undisputed facts are questions of law, which we also review de novo. (*Smith v. Superior Court* (2006) 39 Cal.4th 77, 83 [45 Cal.Rptr.3d 394, 137 P.3d 218]; *People ex rel. Lockyer v. Shamrock Foods Co.* (2000) 24 Cal.4th 415, 432 [101 Cal.Rptr.2d 200, 11 P.3d 956]; see *Scottish Rite Cathedral Assn. of Los Angeles v. City of Los Angeles* (2007) 156 Cal.App.4th 108, 115 [67 Cal.Rptr.3d 207].) "[S]tatutes governing conditions of employment are to be construed broadly in favor of protecting employees." (*Murphy v. Kenneth Cole Productions, Inc.* (2007) 40 Cal.4th 1094, 1103 [56 Cal.Rptr.3d 880, 155 P.3d 284] (*Kenneth Cole Productions*); see *Martinez v. Combs* (2010) 49 Cal.4th 35, 61 [109 Cal.Rptr.3d 514, 231 P.3d 259].) "We construe wage orders, as quasi-legislative regulations, in accordance with the standard rules of statutory interpretation." (*Bearden, supra*, 138 Cal.App.4th at p. 435.)

When a statute empowers an administrative agency to adopt regulations implementing the legislation, the agency acts in a "quasi-legislative" capacity, having been delegated the Legislature's lawmaking power. (*Yamaha Corp. of America v. State Bd. of Equalization* (1998) 19 Cal.4th 1, 11 [78 Cal.Rptr.2d 1, 960 P.2d 1031].) Judicial review of quasi-legislative actions is limited to the determination whether the regulation is within the scope of the authority conferred and is reasonably necessary to effectuate the purpose of the statute under which it is enacted. (See *id.* at pp. 10–11; *Woods v. Superior Court* (1981) 28 Cal.3d 668, 679 [170 Cal.Rptr. 484, 620 P.2d 1032].) In deciding whether the regulation conflicts with its legislative mandate, however, the court does not defer to the agency's interpretation of the law under which the regulation issued, but rather exercises its own independent judgment. (See *Kenneth Cole Productions, supra*, 40 Cal.4th at pp. 1105–1106, fn. 7 ["[w]hile the [agency's] construction of a statute is entitled to consideration and respect, it is not binding and it is ultimately for the judiciary to interpret this statute"]; *Yamaha*, at p. 11, fn. 4 ["[t]he court, not the agency, has 'final

responsibility for the interpretation of the law' under which the regulation was issued"]; see also *California Assn. of Psychology Providers v. Rank* (1990) 51 Cal.3d 1, 11 [270 Cal.Rptr. 796, 793 P.2d 2] [" '[a]dministrative regulations that alter or amend the statute or enlarge or impair its scope are void and courts not only may, but it is their obligation to strike down such regulations' "].)

### 2. *The Governing Labor Code Provisions and Wage Order 16*

Section 512, added to the Labor Code as part of the Eight-Hour-Day Restoration and Workplace Flexibility Act of 1999 (1999 Restoration Act) (Stats. 1999, ch. 134, § 6, p. 1823)[4] provides, "An employer may not employ an employee for a work period of more than five hours per day without providing the employee with a meal period of not less than 30 minutes, except that if the total work period per day of the employee is no more than six hours, the meal period may be waived by mutual consent of both the employer and employee. An employer may not employ an employee for a work period of more than 10 hours per day without providing the employee with a second meal period of not less than 30 minutes, except that if the total hours worked is no more than 12 hours, the second meal period may be waived by mutual consent of the employer and the employee only if the first meal period was not waived." (§ 512, subd. (a).)[5]

Section 514, another provision of the 1999 Restoration Act, as amended in 2001, provides, "Sections 510 and 511 [relating to overtime compensation

---

[4] As the *Bearden* court explained, "In 1999, in response to the IWC's elimination of daily overtime rules in certain industries, the Legislature passed and the Governor signed Assembly Bill No. 60 (1999–2000 Reg. Sess.), the Eight-Hour-Day Restoration and Workplace Flexibility Act of 1999. [Citation.] Among other things, this legislation restored the eight-hour workday (§ 510) and mandated that the IWC conduct public hearings and adopt consistent wage orders (§ 517, subd. (a)), including orders pertaining to meal and rest periods (§ 516). [Citations.] The Act established a new statutory scheme governing hours of labor and overtime compensation for all industries and occupations." (*Bearden, supra*, 138 Cal.App.4th at p. 434; see also *Johnson v. Arvin-Edison Water Storage Dist.* (2009) 174 Cal.App.4th 729, 735 [95 Cal.Rptr.3d 53] [discussing genesis of §§ 510 and 512].)

[5] As originally enacted section 512 contained the language quoted in the text and had no subdivisions. Section 512 was amended by urgency legislation, which also amended sections 515 and 516 and added section 515.5 to the Labor Code, effective September 19, 2000, designating the former section as subdivision (a) and adding a new subdivision (b) providing, "Notwithstanding subdivision (a), the Industrial Welfare Commission may adopt a working condition order permitting a meal period to commence after six hours of work if the commission determines that the order is consistent with the health and welfare of the affected employees." (Stats. 2000, ch. 492, § 1, p. 3500.) Current subdivisions (c) and (d), exempting employees in the wholesale baking industry (see Stats. 2003, ch. 207, § 1) and the motion picture and broadcasting industries (see Stats. 2005, ch. 414, § 1) if the employees are covered by a qualifying collective bargaining agreement were added several years later. None of these amendments modified the statutory language originally adopted and now found in subdivision (a).

and alternative workweek schedules] do not apply to an employee covered by a valid collective bargaining agreement if the agreement expressly provides for the wages, hours of work, and working conditions of the employees, and if the agreement provides premium wage rates for all overtime hours worked and a regular hourly rate of pay for those employees of not less than 30 percent more than the state minimum wage." As originally enacted, however, former section 514 stated, "This chapter [(§§ 500–558)] does not apply to an employee covered by a valid collective bargaining agreement . . . ." (Stats. 1999, ch. 134, § 8, pp. 1823–1824.) That is, the 2001 amendment substituted "Sections 510 and 511 do" for "This chapter does" in the introductory clause. (See Stats. 2001, ch. 148, § 1.)

Section 516, also enacted as part of the 1999 Restoration Act and amended shortly thereafter by urgency legislation effective September 19, 2000 (Sen. Bill No. 88 (1999–2000 Reg. Sess.); Stats. 2000, ch. 492, § 4), provides, "Except as provided in Section 512, the Industrial Welfare Commission may adopt or amend working condition orders with respect to break periods, meal periods, and days of rest for any workers in California consistent with the health and welfare of those workers."[6] As explained in a portion of the legislative history of the urgency legislation (Sen. Bill No. 88 (1999–2000 Reg. Sess.)), quoted in *Bearden, supra*, 138 Cal.App.4th at page 438, " 'Labor Code Section 512 codifies the duty of an employer to provide employees with meal periods. *Labor Code Section 516 establishes the authority of IWC to adopt or amend working condition orders with respect to break periods, meal periods, and days of rest. This bill provides that IWC's authority to adopt or amend orders under Section 516 must be consistent with the specific provisions of Labor Code Section 512 . . . .' "* (Some italics added.)

Section 226.7, adopted later in the same 1999–2000 legislative session as the 1999 Restoration Act and Senate Bill No. 88 (1999–2000 Reg. Sess.), the subsequent, clarifying urgency legislation, provides, "(a) No employer shall require any employee to work during any meal or rest period mandated by an applicable order of the Industrial Welfare Commission. [¶] (b) If any employer fails to provide an employee a meal period or rest period in accordance with an applicable order of the Industrial Welfare Commission, the

---

[6] Long before enactment of the 1999 Restoration Act, section 1173 generally authorized the IWC to promulgate orders regulating wages, hours and working conditions throughout the state. (See *Martinez v. Combs, supra*, 49 Cal.4th at p. 55; *Monzon v. Schaefer Ambulance Service, Inc.* (1990) 224 Cal.App.3d 16, 29 [273 Cal.Rptr. 615]; *Bearden, supra*, 138 Cal.App.4th at pp. 433–434.) Section 517, subdivision (a), part of the 1999 Restoration Act (see Stats. 1999, ch. 134, § 11, p. 1825), directed the IWC to "adopt wage, hours, and working conditions orders consistent with this chapter without convening wage boards." Although the IWC was defunded by the Legislature effective July 1, 2004, its wage orders remain in effect. (*Kenneth Cole Productions, supra*, 40 Cal.4th 1094; *Huntington Memorial Hospital v. Superior Court* (2005) 131 Cal.App.4th 893, 902, fn. 2 [32 Cal.Rptr.3d 373].)

employer shall pay the employee one additional hour of pay at the employee's regular rate of compensation for each work day that the meal or rest period is not provided." Section 226.7 became effective January 1, 2001.

The IWC adopted wage order 16 on October 23, 2000, but like section 226.7 the wage order, which applies to onsite employees in the construction, drilling, logging and mining industries, became effective January 1, 2001. Section 10 of the wage order governs meal periods. Section 10(A) and (B) track the language of section 512, subdivision (a): "(A) No employer shall employ any person for a work period of more than five (5) hours without a meal period of not less than 30 minutes, except that when a work period of not more than six (6) hours will complete the day's work the meal period may be waived by mutual consent of employer and employee. (See Labor Code section 512.) [¶] (B) An employer may not employ an employee for a work period of more than ten (10) hours per day without providing the employee with a second meal period of not less than 30 minutes, except that if the total hours worked is no more than 12 hours, the second meal period may be waived by mutual consent of employer and employee only if the first meal period was not waived. (See Labor Code section 512.)" Section 10(E), in language borrowed from section 514, exempts from the meal period requirements employees covered by qualifying collective bargaining agreements: "Collective Bargaining Agreements. Subsections (A), (B) and (D) of Section 10, Meal Periods, shall not apply to any employee covered by a valid collective bargaining agreement if the agreement expressly provides for the wages, hours of work, and working conditions of the employees, and if the agreement provides premium wage rates for all overtime hours worked and a regular hourly rate of pay for those employees of not less than 30 percent more than the state minimum wage."

### 3. The Decision in Bearden Invalidating Section 10(E) of Wage Order 16

In *Bearden, supra,* 138 Cal.App.4th 429 our colleagues in Division Four reviewed an order dismissing the complaint filed by six mine workers against their employer, U.S. Borax, for, among other alleged Labor Code violations, its failure to allow a second meal period during the 12-hour shifts they were working. The trial court had sustained U.S. Borax's demurrer to the complaint without leave to amend, ruling that the meal period exemption in wage order 16, section 10(E), for employees covered by qualifying collective bargaining agreements relieved U.S. Borax of the obligation in section 512 and wage order 16, section 10(B), to provide a second meal period. (*Bearden,* at p. 433.)

The mine workers argued the IWC had exceeded its authority in adopting the collective bargaining agreement exception. The appellate court agreed,

explaining the authority of an administrative agency like the IWC to adopt regulations is limited by the enabling legislation (*Bearden, supra,* 138 Cal.App.4th at p. 435; see *Agnew v. State Bd. of Equalization* (1999) 21 Cal.4th 310, 321 [87 Cal.Rptr.2d 423, 981 P.2d 52]) and holding wage order 16, section 10(E), conflicts with section 512 by creating an exception to that statute's meal period requirements not authorized by the Legislature. (*Bearden,* at p. 437; see *id.* at p. 435 [describing § 512's authorization of a waiver of the second meal period by mutual consent and its exemptions for certain workers in the wholesale baking, motion picture and broadcasting industries].)

Rejecting various arguments advanced by U.S. Borax purporting to find a statutory basis for the IWC's action, the *Bearden* court concluded, "[W]e are presented with a new and broad regulation which would exempt legislatively mandated meal period requirements created by the IWC without specific legislative authorization. Our review of the wage and hour provisions of the Labor Code makes it plain that the Legislature exercised its power to create exceptions to the requirements where it thought best. The broad powers granted to the IWC do not extend to the creation of additional exemptions from the meal period requirement beyond those provided by the Legislature. This is especially true in light of the express language of section 516, which we have discussed. We conclude that the IWC exceeded its authority in adopting section 10(E) of the Wage Order and that the exemption therefore is invalid." (*Bearden, supra,* 138 Cal.App.4th at p. 440.)

After holding wage order 16, section 10(E), invalid and rejecting the argument the mine workers were required to pursue their meal period claims through arbitration (see *Bearden, supra,* 138 Cal.App.4th at p. 441), the *Bearden* court addressed U.S. Borax's alternative contention that, even if section 10(E) is invalid, the court's decision should apply "prospectively only" because it had justifiably relied on the exemption. (*Bearden,* at p. 442.) The court first observed, although judicial decisions are generally given retroactive effect, even if they represent a clear change in the law, several factors—the reasonableness of the parties' reliance on the former rule, the substantive or procedural nature of the change, the effect of retroactivity on the administration of justice and the purposes served by the new rule—must be considered in determining whether a particular decision should be applied retroactively. (*Id.* at pp. 442–443.) It then held, with one exception, the potential liability of U.S. Borax for violations of section 512 based on a retroactive application of its decision invalidating wage order 16, section 10(E), "necessarily involves factual and policy issues not before us on review of a judgment following the sustaining of the demurrer." (*Bearden,* at p. 443.) Those issues were properly left for the trial court to resolve in the first instance.

However, with respect to the mine workers' claim for damages based on section 226.7, the *Bearden* court concluded there could be no retroactive application of its ruling. "[T]he claim based on section 226.7 presents an issue of law that is fully developed in the case before us. Section 226.7 prohibits employers from requiring an employee to work during a meal or rest period mandated by an applicable order of the IWC. It also provides for a penalty[7] where the employer fails to provide a meal or rest period in accordance with an applicable IWC order. The problem with plaintiffs' position is that there was no violation of an IWC *order*. Even though we hold that the exception of section 10(E) is invalid, it is part of the IWC order. Consequently, there is no basis for application of section 226.7." (*Bearden, supra,* 138 Cal.App.4th at p. 443.)

4. *The* Bearden *Court Correctly Held Wage Order 16, Section 10(E), Conflicts with Section 512 and Is Invalid*

Although briefing and oral argument before respondent superior court focused exclusively on the proper interpretation of *Bearden*'s invalidation of wage order 16, section 10(E), as it relates to petitioners' ability to state a claim for recovery of premium pay under section 226.7—an issue we address in the following part of this opinion—in its return to the petition for writ of mandate, TWI urges that we reconsider the *Bearden* decision and find the court erred in concluding the IWC had exceeded its authority when it adopted the collective bargaining agreement exemption in section 10(E). TWI's argument is premised on language in the original version of section 514, quoted above, which provided until modified in 2001, "This chapter does not apply to an employee covered by a valid collective bargaining agreement . . . ." (Stats. 1999, ch. 134, § 8, pp. 1823–1824.)

Although the exemption from meal period requirements for employees covered by qualifying collective bargaining agreements is inconsistent with language in sections 512 and 516, as the *Bearden* court held, TWI urges that pursuant to former section 514 neither of those statutes (or any other provision in ch. 1 of pt. 2 of div. 2 of the Lab. Code, that is §§ 500–558) applied to union-represented employees when the IWC adopted wage order 16, section 10(E). Far from being an act in excess of its authority, when it adopted wage order 16, section 10(E), the IWC was simply including the identical exemption already contained in former section 514. Moreover, when the Legislature amended former section 514 in 2001 by Senate Bill No. 1208 (2001–2002 Reg. Sess.) to limit the exceptions to various Labor Code

---

[7] As discussed below, in *Kenneth Cole Productions, supra,* 40 Cal.4th 1094, decided a year after *Bearden, supra,* 138 Cal.App.4th 429, the Supreme Court held the additional hour of pay required by section 226.7 "is a premium wage intended to compensate employees, not a penalty." (*Kenneth Cole Productions,* at p. 1114.)

requirements for union-represented employees to those contained in sections 510 and 511, it expressly stated the amendments were "declarative of existing law and shall not be deemed to alter, modify, or otherwise affect any provision of any wage order of the Industrial Welfare Commission." (Stats. 2001, ch. 148, § 4.)

TWI's recitation of the history of section 514 does not in any way diminish the persuasiveness of the *Bearden* court's reasoning or the soundness of its holding invalidating wage order 16, section 10(E). First, by the time the issue was presented in *Bearden*, nothing in section 514 authorized the IWC to create exemptions from the section 512 meal period requirements for employees covered by qualified collective bargaining agreements. To the contrary, as amended section 514 reinforced the conclusion that no exemption from section 512's meal period requirements for union-represented employees was permitted except as specified in section 512 itself. Thus, even if adoption of the section 10(E) exemption had at one point been within the authority of the IWC, subsequent to January 1, 2002 that provision was invalid because of its conflict with the express provisions of sections 512 and 516, as *Bearden* thoroughly explained. (See *Bearden, supra*, 138 Cal.App.4th at pp. 436–440.)

Second, as discussed, the Legislature expressly stated the 2001 amendment limiting the scope of section 514 was "declarative of existing law." That explanation of the purpose of the amendment, contained in an uncodified section of the legislation itself (Stats. 2001, ch. 148, § 4), is confirmed in the Senate Rules Committee, Office of Senate Floor Analyses, 3d reading analysis of Senate Bill No. 1208 (2001–2002 Reg. Sess.) as amended May 29, 2001, page 1, which states, "This bill clarifies existing law relating to exclusion of the application of overtime requirements for employees covered by collective bargaining agreements." The Senate third reading analysis of the bill, as amended June 14, 2001, similarly comments, "This bill is also designed to clarify the scope of two provisions of AB 60 [(the 1999 Restoration Act)], which exclude the application of overtime requirements to an employee covered by a qualifying collective bargaining agreement. AB 60 was intended to provide that an employee covered by such an agreement was not covered by requirements for daily overtime, an alternative workweek procedure, and one day's rest in seven. By clarifying that such exclusions are specific, and are not intended to apply to the entirety of Chapter One of Part Two (commencing with Section 500) of the Labor Code, this bill also confirms that IWC retains its authority to establish regulations regarding wage and hour matters for employees covered by a collective bargaining agreement." (Sen. Rules Com., Ofc. of Sen. Floor Analyses, 3d reading analysis of Sen. Bill No. 1208 (2001–2002 Reg. Sess.) as amended June 14, 2001, p. 3.)

Thus, both the language of Senate Bill No. 1208 (2001–2002 Reg. Sess.) and its legislative history confirm that it had never been the Legislature's

intent to exclude union-represented employees from any of the protections of the 1999 Restoration Act other than the overtime and alternative workweek provisions of sections 510 and 511.[8] That legislative declaration significantly reinforces the *Bearden* court's conclusion the IWC exceeded its authority when it adopted wage order 16, section 10(E), excluding union-represented employees from the protections of section 512. (See *Eu v. Chacon* (1976) 16 Cal.3d 465, 470 [128 Cal.Rptr. 1, 546 P.2d 289] ["[a]lthough a legislative expression of the intent of an earlier act is not binding upon the courts in their construction of the prior act," subsequent expressions of intent "may properly be considered together with other factors in arriving at the true legislative intent existing when the prior act was passed"]; *Aguiar v. Superior Court* (2009) 170 Cal.App.4th 313, 327 [87 Cal.Rptr.3d 813] [city council's subsequent repeal of administrative regulation is "powerful evidence" of its intent in adopting original ordinance]; see also *Valles v. Ivy Hill Corp.* (9th Cir. 2005) 410 F.3d 1071, 1079 ["Recognizing the ambiguity that it had created, the legislature passed a new bill that clarified that § 514 was not intended to create a blanket collective bargaining exemption for *all* of chapter 500 or to take away the authority of the IWC to make wage orders applicable to all employers, including those signatory to collective bargaining agreements. Rather, the legislature declared that § 514 was intended to exempt workers covered by a collective bargaining agreement from 'specified code sections relating to compensation for overtime work and authorizing the adoption of an alternative workweek schedule.'" "Thus, the legislature made it clear that the meal period provisions remained applicable at all times to employees covered by collective bargaining agreements."].)

Finally, TWI misconstrues the import of the Legislature's additional declaration that the 2001 amendment to section 514 made by Senate Bill No. 1208 (2001–2002 Reg. Sess.) "shall not be deemed to alter, modify, or otherwise affect any provision of any wage order of the Industrial Welfare Commission." (Stats. 2001, ch. 148, § 4.) Because the amendment itself was intended to be declarative of existing law, its clarification of the scope of the permissible exemptions for workers covered by qualified collective bargaining agreements—limited to the provisions of sections 510 and 511—similarly should not affect any existing IWC wage orders, provided those wage orders did not run afoul of existing law. Nothing in that language supports TWI's suggestion that meal period provisions plainly unauthorized after January 1, 2002 nonetheless remain enforceable if they were initially adopted prior to January 1, 2002. (Cf. § 516 ["[e]xcept as provided in Section 512, the Industrial

---

[8] In the introductory paragraph to its statement as to the basis for wage order 16, the IWC recognized the broad sweep of the 1999 Restoration Act, noting, "The Legislature intended the provisions of AB 60 [(the 1999 Restoration Act)] to apply to all workers." (IWC, Statement as to the Basis for Wage Order No. 16 Regarding Certain On-site Occupations in the Construction, Drilling, Mining, and Logging Industries (Jan. 2001) p. 1.)

Welfare Commission may adopt or amend working condition orders with respect to break periods, meal periods, and days of rest . . . ."].)[9]

5. *TWI's Failure to Provide Its Employees with Second Meal Periods Required by Section 512 and Wage Order 16, Section 10(B), Is Subject to an Award of Premium Pay as Specified in Section 226.7*

   a. *Liability under section 226.7 for failure to provide a second meal period after* Bearden *became final*

After determining wage order 16, section 10(E)'s exemption for workers covered by a qualified collective bargaining agreement conflicted with section 512, subdivision (a), exceeded the authority of the IWC, and was, therefore, invalid, the *Bearden* court turned to the question whether its ruling should be applied retroactively. As the court described, "[U.S.] Borax also contends that in the event we find the Wage Order invalid as it applies to this case, we must apply our decision prospectively only." (*Bearden, supra,* 138 Cal.App.4th at p. 442.) The court agreed in part, holding U.S. Borax was not liable under section 226.7 for its conduct "committed before the filing of this opinion" but leaving to the trial court in the first instance all other issues of its potential liability for past violations of section 512. (*Bearden,* at p. 443.) The court explained, even though section 10(E) is invalid, "it is part of the IWC order"; and, as to conduct that occurred before its decision, "there is no basis for

---

[9] After Lazarin, Quamina and Skinner petitioned this court for a writ of mandate, legislation was introduced that would amend section 512 to exempt from that section's meal period provisions employees in a construction occupation, commercial drivers, employees in the security services industry employed as security officers and employees of electrical and gas corporations or local publicly owned electric utilities, as defined, if those employees are covered by a valid collective bargaining agreement containing specified terms, including meal period provisions. (Assem. Bill No. 569 (2009–2010 Reg. Sess.) as amended June 16, 2010.) The bill in its final form (as amended Aug. 20, 2010) was passed by the Legislature on August 26, 2010 and signed by the Governor on September 30, 2010. Effective January 1, 2011, new subdivision (e) of section 512 provides: "Subdivisions (a) and (b) do not apply to an employee specified in subdivision (f) if both of the following conditions are satisfied: [¶] (1) The employee is covered by a valid collective bargaining agreement. [¶] (2) The valid collective bargaining agreement expressly provides for the wages, hours of work, and working conditions of employees, and expressly provides for meal periods for those employees, final and binding arbitration of disputes concerning application of its meal period provisions, premium wage rates for all overtime hours worked, and a regular hourly rate of pay of not less than 30 percent more than the state minimum wage rate." (Stats. 2010, ch. 662, § 1.) New subdivision (f)(1) provides subdivision (e) applies to "[a]n employee employed in a construction occupation," which is defined in new subdivision (g)(2) to mean "all job classifications associated with construction by Article 2 (commencing with Section 7025) of Chapter 9 of Division 3 of the Business and Professions Code, including work involving alteration, demolition, building, excavation, renovation, remodeling, maintenance, improvement, and repair, and any other similar or related occupation or trade." (Stats. 2010, ch. 662, § 1.) No issue of the impact, if any, of this amendment on petitioners' claim for recovery of premium pay under section 226.7 is presented in this proceeding.

application of section 226.7," which prohibits employers from requiring an employee to work during a meal period mandated by an applicable order of the IWC. (*Bearden*, at p. 443.)

■ Notwithstanding TWI's argument to the contrary, no fair construction of the *Bearden* court's holding that its ruling invalidating section 10(E) applied "prospectively only" with respect to liability for premium pay under section 226.7 supports the conclusion an employer who thereafter denies meal periods required by section 512 and wage order 16, section 10(A) and (B), is not obligated to compensate its employees for their injuries as specified in section 226.7. Indeed, TWI's position—and respondent court's order granting summary adjudication as to the fifth cause of action—conflict with wage order 16 itself, which contains a severability clause providing if, as here, one section or subdivision of the wage order is found to be unauthorized, the remaining provisions of the order shall continue "as if the part [so] held to be invalid . . . had not been included." (Wage order 16, § 19;[10] see *Martinez v. Combs, supra,* 49 Cal.4th at pp. 60–61 [courts are obligated to show "extraordinary deference" in enforcing the specific terms of the IWC's wage orders].)

■ " 'Although not conclusive, a severability clause normally calls for sustaining the valid part of the enactment, especially when the invalid part is mechanically severable.' " (*Calfarm Ins. Co. v. Deukmejian* (1989) 48 Cal.3d 805, 821 [258 Cal.Rptr. 161, 771 P.2d 1247].) In addition to mechanical severability, present here because section 10(E) is a distinct and separate paragraph in wage order 16, "[t]he cases prescribe three criteria for severability: the invalid provision must be grammatically, functionally, and volitionally separable." (*Calfarm*, at p. 821; accord, *Hotel Employees & Restaurant Employees Internat. Union v. Davis* (1999) 21 Cal.4th 585, 613 [88 Cal.Rptr.2d 56, 981 P.2d 990].) Section 10(E) is clearly severable under these criteria: Grammatically, as well as mechanically, section 10(E) "can be removed as a whole without affecting the wording of any other provision." (*Calfarm*, at p. 822.) Functionally, the remaining provisions of section 10 of the wage order are capable of independent application. (See *McMahan v. City and County of San Francisco* (2005) 127 Cal.App.4th 1368, 1378–1379 [26 Cal.Rptr.3d 509]; *Barlow v. Davis* (1999) 72 Cal.App.4th 1258, 1265–1266 [85 Cal.Rptr.2d 752].) And volitionally, that is, would the IWC have adopted the remaining portions of section 10 of the wage order even if it had foreseen the *Bearden* court's ruling (see *Calfarm*, at p. 822; *Hotel Employees*, at

---

[10] Wage order 16, section 19 provides in full: "If the application of any provision of this order, or any section, subsection, subdivision, sentence, clause, ph[r]ase, word, or portion of this order should be held invalid, or unconstitutional or unauthorized or prohibited by statute, the remaining provisions thereof shall not be affected thereby, but shall continue to be given full force and effect as if the part [so] held to be invalid or unconstitutional had not been included therein."

p. 613), the answer must be yes. Section 10(A) and (B) simply implement section 512, subdivision (a)'s legislative mandate. As the *Bearden* court held, the IWC had no discretion to disregard that statutory directive or to create new exceptions to its reach.

■ Thus, after *Bearden* held section 10(E) of wage order 16 invalid, the remainder of wage order 16, including section 10(A) and (B) governing required meal periods, continued in full force and effect and was the "applicable order of the Industrial Welfare Commission" within the meaning of section 226.7 for TWI's union-represented employees. Pursuant to section 226.7, subdivision (b), employees who do not receive second meal periods as required by section 10(B) of wage order 16 are entitled to "one additional hour of pay."

■ Our conclusion invalid section 10(E) is not an operative part of the applicable wage order and does not immunize an employer who violates section 512 and wage order 16, section 10(A) and (B), from liability under section 226.7 is not dependent on a formal amendment or republication of the wage order without the unauthorized section. As directed by the IWC, once invalidated it is as if the offending provision were never part of the wage order. (See, e.g., *Henning v. Industrial Welfare Com.* (1988) 46 Cal.3d 1262, 1280 & fn. 1 [252 Cal.Rptr. 278, 762 P.2d 442] [IWC wage order creating two-tier minimum wage system containing a lower, "alternative minimum wage" for certain employees who customarily receive tips barred by § 351; pursuant to express severability clause in wage order, proper remedy is enforcement of higher wage specified in order as "single minimum wage for all employees"].)[11]

To be sure, section 1182.13, added to the Labor Code effective January 1, 2007, authorized the Department of Industrial Relations (DIR) to amend and republish IWC wage orders to state a higher minimum wage (as specified in another section of the same legislation) and to make an upward adjustment in meal and lodging credits and further directed the DIR to "make no other changes to the wage orders of the Industrial Welfare Commission that are in existence on the effective date of this section." (§ 1182.13, subds. (a) & (b).) As a result, wage order 16 was republished by the DIR with limited modifications, updating minimum wage rates and credits, consistent with the specific directions in section 1182.13. As republished, wage order 16 continued to include section 10(E). However, we reject the suggestion of TWI and amicus curiae Timec Company, Inc., that, by failing to order the DIR to delete section 10(E) from wage order 16 as part of this legislation involving minimum wage rates, the Legislature "tacitly reaffirmed" section 10(E). In

---

[11] The language of the severability clause in the wage order at issue in *Henning v. Industrial Welfare Com., supra,* 46 Cal.3d 1262 is identical to the language in wage order 16, section 19.

light of the express provisions of sections 512 and 516 mandating certain meal periods and instructing the IWC it had no authority to adopt working condition wage orders with respect to meal periods that were inconsistent with those requirements, more than legislative silence and administrative republication of wage order 16 containing the invalid exemption pursuant to section 1182.13 is required to transmute section 10(E) from dross to gold. (Cf. *Ventura County Deputy Sheriffs' Assn. v. Board of Retirement* (1997) 16 Cal.4th 483, 506 [66 Cal.Rptr.2d 304, 940 P.2d 891] [" ' " ' "[s]omething more than mere silence is required before [legislative] acquiescence is elevated into a species of implied legislation" ' " ' "].)

> b.  *Full retroactivity: liability for premium pay under section 226.7 for failure to provide a second meal period before the* Bearden *decision*

■ For the reasons just discussed, the superior court misapplied *Bearden, supra,* 138 Cal.App.4th 429, and erred in concluding petitioners could not state a claim against TWI for recovery of damages under section 226.7.
■ More fundamentally, in light of the Supreme Court's holding in *Kenneth Cole Productions, supra,* 40 Cal.4th 1094, that the additional hour of pay required by section 226.7 is a premium wage intended to compensate injured employees, not a penalty to punish employers (*Kenneth Cole Productions,* at p. 1114),[12] we respectfully disagree with *Bearden*'s conclusion that employees denied uninterrupted meal periods required by section 512 and wage order 16, section 10(A) and (B), are not entitled to recover an additional hour of wages for any period prior to a judicial decision invalidating section 10(E)'s exemption for employees covered by qualifying collective bargaining agreements.[13]

> i.  *Retroactivity of judicial decisions*

■ Unlike statutes, which normally operate prospectively absent an express legislative direction, judicial decisions are generally given retroactive effect. (*Evangelatos v. Superior Court* (1988) 44 Cal.3d 1188, 1207 [246 Cal.Rptr. 629, 753 P.2d 585] [" '[t]he principle that statutes operate only prospectively, while judicial decisions operate retrospectively, is familiar to

---

[12] As previously noted, *Kenneth Cole Productions, supra,* 40 Cal.4th 1094 was decided a year after *Bearden.*

[13] Petitioners' fifth cause of action seeks recovery of premium wages under section 226.7 for a putative class of TWI employees covered by wage order 16 beginning September 16, 2004, four years before the complaint was filed and approximately 18 months before the *Bearden* decision. The Supreme Court in *Kenneth Cole Productions, supra,* 40 Cal.4th at page 1099, however, held the remedy provided in section 226.7 is governed by a three-year statute of limitations.

every law student' " (italics omitted), quoting *United States v. Security Industrial Bank* (1982) 459 U.S. 70, 79–80 [74 L.Ed.2d 235, 103 S.Ct. 407]]; *Newman v. Emerson Radio Corp.* (1989) 48 Cal.3d 973, 978 [258 Cal.Rptr. 592, 772 P.2d 1059] ["[t]he general rule that judicial decisions are given retroactive effect is basic to our legal tradition"]; *Harper v. Virginia Dept. of Taxation* (1993) 509 U.S. 86, 97 [125 L.Ed.2d 74, 113 S.Ct. 2510] [in general, civil decisions "must be given full retroactive effect in all cases still open on direct review and as to all events, regardless of whether such events predate or postdate our announcement of the rule"].)

This general principle of retroactivity has been consistently applied by the California Supreme Court in cases involving recovery of damages by injured plaintiffs: "With few exceptions and even after expressly considering suggestions to the contrary, California courts have consistently applied tort decisions retroactively even when those decisions declared new causes of action or expanded the scope of existing torts in ways defendants could not have anticipated prior to our decision." (*Newman v. Emerson Radio Corp., supra*, 48 Cal.3d at pp. 981–982.) For example, in *Peterson v. Superior Court* (1982) 31 Cal.3d 147 [181 Cal.Rptr. 784, 642 P.2d 1305] the Supreme Court applied retroactively its decision overruling prior decisions precluding recovery of punitive damages from an intoxicated driver; and in *Mark v. Pacific Gas & Electric Co.* (1972) 7 Cal.3d 170 [101 Cal.Rptr. 908, 496 P.2d 1276] the court applied retroactively its landmark decision in *Rowland v. Christian* (1968) 69 Cal.2d 108 [70 Cal.Rptr. 97, 443 P.2d 561], rejecting prior common law rules limiting the duty of a landowner to a trespasser or invitee. (Other examples of retroactive application of judicial decisions expanding a plaintiff's ability to recover in tort are identified in *Newman*, at p. 982.)

There is, however, no absolute rule of retroactivity. " ' "[C]onsiderations of fairness and public policy may require that a decision be given only prospective application. [Citations.] Particular considerations relevant to the retroactivity determination include the reasonableness of the parties' reliance on the former rule, the nature of the change as substantive or procedural, retroactivity's effect on the administration of justice, and the purposes to be served by the new rule." ' " (*Claxton v. Waters* (2004) 34 Cal.4th 367, 378–379 [18 Cal.Rptr.3d 246, 96 P.3d 496]; accord, *Woods v. Young* (1991) 53 Cal.3d 315, 330 [279 Cal.Rptr. 613, 807 P.2d 455].) Any such exception to the general rule of retroactivity, however, is justified only "when considerations of fairness and public policy are so compelling in a particular case that, on balance, they outweigh the considerations that underlie the basic rule." (*Newman v. Emerson Radio Corp., supra*, 48 Cal.3d at p. 983; accord, *Laird v. Blacker* (1992) 2 Cal.4th 606, 620 [7 Cal.Rptr.2d 550, 828 P.2d 691] [departure from the standard rule of retroactivity "is limited to those narrow circumstances in which considerations of fairness and public policy preclude retroactivity"].) Moreover, this exception to the principle of retroactivity is

inapplicable when the court is deciding a legal question in the first instance, rather than overturning prior appellate decisions. (See *Brennan v. Tremco* (2001) 25 Cal.4th 310, 318 [105 Cal.Rptr.2d 790, 20 P.3d 1086] ["We have not overruled *any* decision predating the [operative events], much less a prior decision of this court. [Citation.] We have certainly not disapproved 'of a long-standing and widespread practice expressly approved by a near-unanimous body of lower court authorities.' [Citation.] No reason appears not to apply today's decision to this case."]; *Abramson v. Juniper Networks, Inc.* (2004) 115 Cal.App.4th 638, 660–661 [9 Cal.Rptr.3d 422] [same].)

### ii. *Murphy v. Kenneth Cole Productions, Inc.*

■ In *Kenneth Cole Productions, supra*, 40 Cal.4th 1094, the Supreme Court considered whether the section 226.7, subdivision (b), remedy of one additional hour of pay constitutes a wage or premium payment subject to a three-year statute of limitations (Code Civ. Proc., § 338) or a penalty subject to a one-year statute of limitations (Code Civ. Proc., § 340). After reviewing the plain language of the statute itself and the legislative and administrative history of the provision, the court concluded it is a premium wage intended to compensate employees, rather than a penalty to punish the employer for denying employees their meal and rest periods, and, therefore, subject to a three-year limitations period. (*Kenneth Cole Productions*, at pp. 1102–1111.) "[W]hatever incidental behavior-shaping purpose section 226.7 serves, the Legislature intended section 226.7 first and foremost to compensate employees for their injuries." (*Id.* at pp. 1110–1111.)

In reaching its conclusion the Supreme Court explained employees forced to forgo an unpaid 30-minute meal period suffer both economic and noneconomic injuries. First, the employee loses a benefit to which he or she is entitled under the law. "While the employee is paid for the 30 minutes of work, the employee has been deprived of the right to be free of the employer's control during the meal period." (*Kenneth Cole Productions, supra*, 40 Cal.4th at p. 1104.) The lack of an exact correlation between that lost benefit and the compensation prescribed did not transform the remedy into a penalty. "Courts have long recognized that the monetary value of harm to employees can be difficult to ascertain. [Citation.] Where damages are obscure and difficult to prove, the Legislature may select a set amount of compensation without converting that remedy into a penalty." (*Id.* at p. 1112.) In addition, the court described the adverse, noneconomic consequences to employees required to work through a mandatory meal or rest period. "Employees denied their rest and meal periods face greater risk of work-related accidents and increased stress . . . . Indeed, health and safety considerations (rather than purely economic injuries) are what motivated the IWC to adopt mandatory meal and rest periods in the first place." (*Id.* at

p. 1113.) Acknowledging it may be difficult to assign a value to these noneconomic injuries, the court concluded the Legislature was entitled to select an amount of compensation it deemed appropriate. (*Ibid.*)

### iii. *Retroactive recovery of premium pay under section 226.7*

TWI's principal argument against full retroactivity, similar to the argument advanced by the employer in *Bearden* (see *Bearden, supra,* 138 Cal.App.4th at p. 442), is that it reasonably relied on wage order 16, section 10(E)'s exemption from the meal period requirements for workers covered by a qualified collective bargaining agreement and it would be unfair to impose a penalty for its conduct prior to judicial invalidation of that provision. TWI also urges, "Constitutional principles of due process require that laws must be sufficiently clear to give fair warning of the conduct prohibited, and they must provide a standard or guide against which conduct can be uniformly judged by courts and administrative agencies."

We certainly do not disagree with TWI's abstract statement of constitutional law. But ever since adoption of the 1999 Restoration Act, TWI and other employers in this state have been on clear notice, pursuant to section 512, subdivision (a) (as reinforced by the provisions of § 516 limiting the authority of the IWC to adopt or amend wage orders with respect to meal periods), they were required to provide employees with a second uninterrupted 30-minute meal period when they worked more than 10 hours in a day. Moreover, whatever TWI's view of the IWC's authority prior to the 2001 amendment limiting the scope of section 514's exception for employees covered by qualifying collective bargaining agreements, once that amendment was effective, it was equally clear that union-represented employees could not be denied statutorily mandated meal periods.

Section 226.7 provides but one remedy for a violation of this substantive standard. Other remedies for this unlawful conduct are also potentially available—for example, injunctive relief under Business and Professions Code section 17200 and civil penalties under the Labor Code Private Attorneys General Act of 2004 (§ 2698 et seq.). Significantly, however, neither section 226.7 nor wage order 16 establishes the substantive standard of employer conduct itself (see *Kenneth Cole Productions, supra,* 40 Cal.4th at pp. 1110–1111); section 512 does.

The issue, then, is not whether TWI was on notice its failure to provide required meal periods was unlawful—it surely was—but whether it is somehow unfair to apply to TWI the particular remedy specified in section 226.7 for its actions prior to the decision in *Bearden.* We understand the *Bearden* court's reluctance to punish an employer for conduct apparently excepted

from penalties by the IWC. (Cf. *Olszewski v. Scripps Health* (2003) 30 Cal.4th 798, 829 [135 Cal.Rptr.2d 1, 69 P.3d 927] [" 'retroactive application of a decision disapproving prior authority on which a person may reasonably rely in determining what conduct will subject the person to penalties, denies due process' "].) But no similar reticence is justified when section 226.7's additional hour of pay is properly understood as compensation to employees for injuries they have suffered. (See *Kenneth Cole Productions, supra,* 40 Cal.4th at pp. 1111–1113.) Having received the benefit of its employees working without the statutorily mandated second meal periods, there is nothing unfair about requiring TWI to compensate them for that time in accordance with the formula prescribed by the Legislature.

Finally, the linguistic paradox that stymied the mine workers' recovery under section 226.7 in *Bearden, supra,* 138 Cal.App.4th at page 443, is illusory. Section 10(E) of wage order 16, invalid when adopted by the IWC because inconsistent with the specific provisions of section 512, was, like the similarly invalid alternative minimum wage for tipped employees considered by the Supreme Court in *Henning v. Industrial Welfare Com., supra,* 46 Cal.3d 1262, "void *ab initio.*" (*Id.* at pp. 1280–1281, fn. 1.) Not only was section 10(E) no longer part of wage order 16 once the Court of Appeal held the IWC had exceeded its authority by excepting workers covered by qualified collective bargaining agreements from the meal period requirements of section 512 and wage order 16, section 10(B), but also, as directed by the IWC itself, it was "as if the part [so] held to be invalid . . . had not been included" in the wage order at all. (Wage order 16, § 19; cf. *Aguiar v. Superior Court, supra,* 170 Cal.App.4th 313 [employees paid in accordance with invalid regulation limiting effect of Los Angeles's living wage ordinance entitled to seek recovery of additional compensation for period regulation was in effect].)

In sum, there is no compelling reason of fairness or public policy that warrants an exception to the general rule of retroactivity for a judicial decision invalidating section 10(E) of wage order 16. Petitioners are entitled to seek premium pay under section 226.7 for any failure by TWI to provide mandatory second meal periods before the *Bearden* decision that falls within the governing limitations period.[14]

## DISPOSITION

The petition is granted. Let a peremptory writ of mandate issue directing respondent Los Angeles County Superior Court to vacate its order of

---

[14] In light of our decision concerning the meaning and impact of *Bearden*'s invalidation of section 10(E) of wage order 16, we need not address petitioners' additional argument that respondent superior court's decision regarding section 226.7 liability violates the National Labor Relations Act and contradicts the United States Supreme Court's decision in *Livadas v. Bradshaw* (1994) 512 U.S. 107 [129 L.Ed.2d 93, 114 S.Ct. 2068].

February 11, 2010 granting Total Western, Inc.'s motion for summary adjudication as to Lazarin, Quamina and Skinner's fifth cause of action for failure to provide second meal periods and to enter a new order denying that motion and to conduct further proceedings not inconsistent with this opinion. Petitioners are to recover their costs in this writ proceeding.

Woods, J., and Jackson, J., concurred.

The petition of real party in interest for review by the Supreme Court was denied January 19, 2011, S188164.