Filed 2/10/15

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| JAZMINA GERARD et al., | |
| Plaintiffs and Appellants, | G048039 |
| v. | (Super. Ct. No. 30-2008-00096591) |
| ORANGE COAST MEMORIAL MEDICAL CENTER, | O P I N I O N |
| Defendant and Respondent. | |

Appeal from a judgment and an order of the Superior Court of Orange County, Nancy Wieben Stock, Judge. Reversed and remanded with directions. Requests for judicial notice. Granted.

Law Offices of Mark Yablonovich, Mark Yablonovich, Patrick Clifford, Neda Roshanian and Joseph Hoff for Plaintiffs and Appellants.

Sheppard, Mullin, Richter & Hampton, Richard J. Simmons, Derek R. Havel and Daniel J. McQueen for Defendant and Respondent.

Seyfarth Shaw, Jeffrey A. Berman, James M. Harris and Kiran A. Seldon for California Hospital Association as Amicus Curiae on behalf of Defendant and Respondent.

*       *       *

Three health care workers sued their hospital employer in this putative class and private attorney general enforcement action for alleged Labor Code violations and related claims. In this appeal, their primary complaint is a hospital policy illegally let health care employees waive their second meal periods on shifts longer than 12 hours.

A statute requires two meal periods for shifts longer than 12 hours. But an order of the Industrial Welfare Commission (IWC) authorizes employees in the health care industry to waive one of those two required meal periods on shifts longer than 8 hours. The principal issue before us concerns the validity of the IWC order.

We conclude the IWC order is partially invalid to the extent it authorizes second meal break waivers on shifts longer than 12 hours. However, with one exception, the retroactive application of our conclusion must be litigated on remand. We also determine the court incorrectly granted summary judgment and denied class certification.

## FACTS AND PROCEDURAL HISTORY

Plaintiffs and appellants Jazmina Gerard, Kristiane McElroy, and Jeffery Carl are health care workers who were formerly employed by defendant and respondent Orange Coast Memorial Medical Center (hospital). Gerard, McElroy, and Carl allege they usually worked 12-hour shifts, but from time to time worked shifts longer than 12 hours.

A hospital policy allowed health care employees who worked shifts longer than 10 hours caring for patients to voluntarily waive one of their two meal periods, even if their shifts lasted more than 12 hours. Plaintiffs allege they all signed second meal period waivers, and occasionally worked shifts longer than 12 hours without being provided a second meal period.

2

Plaintiff's third amended complaint alleged second meal period waiver and other Labor Code violations, and sought statutory penalties, unpaid wages, and injunctive relief. Gerard alleged claims on her own behalf, and on behalf of others as an "aggrieved employee" under the Private Attorney General Act of 2004 (Lab. Code, § 2698 et seq.; PAGA). McElroy and Carl alleged claims on their own behalf, and on behalf of all other similarly situated persons, and sought class certification (Code Civ. Proc., § 382).

As relevant here, the meal period cause of action alleged:

"51. During the relevant time period, Plaintiffs and other class members who were scheduled to work for a period of time in excess of twelve (12) hours were required to work for periods longer than ten (10) hours, without a second uninterrupted meal period of not less than thirty (30) minutes.

"[¶] . . . [¶]

"54. Defendant's conduct violates the applicable IWC Wage Orders and California Labor Code sections 226.7 and 512[, subdivision] (a)."

Hospital answered and asserted as an affirmative defense, "Plaintiffs' claim for an alleged failure to provide meal periods fails because Defendant utilized valid meal period waivers."

Hospital then moved for summary judgment against Gerard on all of her individual and PAGA claims. The motion asserted in relevant part, "There is no disputed issue of material fact as to Plaintiff's first cause of action for meal period violations because Plaintiff was provided meal periods as required by law."

Gerard opposed the motion for summary judgment. Among other things, Gerard argued hospital's meal period waiver policy was illegal because it directed her to waive and essentially agree she was not entitled to second meal periods on shifts longer than 12 hours, in violation of Labor Code section 512, subdivision (a).

3

In its reply, hospital asserted the California Supreme Court specifically rejected Gerard's "illegal meal period waiver" argument in *Brinker Restaurant Corp. v. Superior Court* (2012) 53 Cal.4th 1004 (*Brinker*). Hospital also objected, on lack of authentication grounds, to certain timecards and wage statements offered by Gerard.

The court granted summary judgment against Gerard finding, among other things, "There is no disputed issue of material fact as to Plaintiff's first cause of action for meal period violations because Plaintiff was provided meal periods as required by law." In comments on the record, the court found Gerard's illegal meal period waiver argument was "incorrect per *Brinker*."

The court also found Gerard's other claims were all derivative, so the failure of her individual meal period claim doomed her other claims too. Finally, the court sustained hospital's objections to the timecards and wage statements offered by Gerard. The court entered judgment against Gerard and in favor of hospital. Gerard appealed from that judgment.

Hospital next moved to deny class certification, and to strike McElroy and Carl's class allegations. McElroy and Carl opposed the motion, in part based on the same illegal second meal period waiver theory asserted by Gerard in opposition to the summary judgment.

The court granted the motion, denied class certification, and struck the class allegations. The court reasoned: "One of the most basic requirements for class certification is . . . a prima facie claim. For, if Plaintiffs do not have a claim there can be no typicality or commonality. Here, the proposed Representative Plaintiffs have failed to show that they have any claim against Defendant. . . . [¶] . . . [¶] [L]iability is not established by an illegal policy; liability is established by a policy that violates the Labor Code to the detriment of the employees by not providing breaks or not paying premiums." McElroy and Carl appealed from the denial of class certification.

4

## DISCUSSION

*1. Wage Order No. 5, Section 11(D) is Partially Invalid.*

Plaintiffs contend hospital's second meal period waiver policy violates Labor Code sections 512, subdivision (a) (section 512(a)) and 516,[1] because section 11(D) (section 11(D)) of IWC wage order No. 5-2001 (Cal. Code Regs., tit. 8, § 11050 (Wage Order No. 5)) is invalid to the extent it allows employees to waive their second meal periods on shifts longer than 12 hours. Plaintiffs assert there is a conflict between section 512(a) and section 11(D), because the latter sanctions second meal period waivers for health care employees who work shifts of more than 12 hours, while the former allows such waivers only if the total hours worked is no more than 12 hours. Moreover, plaintiffs argue, the IWC exceeded its authority by enacting section 11(D), because it created an additional exception for health care workers, beyond the second meal period waiver exception in section 512(a), all in violation of section 516. We agree.

*A. The Governing Labor Code Provisions and Wage Order No. 5*

We begin with a brief overview of the statutory scheme. Employers must afford their nonexempt employees meal periods and rest periods during the workday. (See §§ 226.7,[2] 512; Wage Order No. 5.) Section 226.7, subdivision (b) prohibits an employer from requiring an employee to work during any meal or rest period mandated by an applicable order of the IWC. In turn, section 512 and Wage Order No. 5, section 11, prescribe meal periods. Employers who violate these requirements must pay premium wages. (§ 226.7, subd. (c); Wage Order No. 5, § 11(B).)

---

[1] All statutory references are to the Labor Code unless otherwise indicated.

[2] Section 226.7 was amended in 2013. (Stats. 2013, ch. 719 (S.B. 435), § 1.) As relevant here, the amendment redesignated former subdivisions (a) and (b) as subdivisions (b) and (c), respectively, and amended both subdivisions in other ways not pertinent to this appeal. All subsequent references are to the current redesignated subdivisions (b) and (c).

5

Section 512(a) provides in pertinent part:  "An employer may not employ an employee for a work period of more than 10 hours per day without providing the employee with a second meal period of not less than 30 minutes, *except that if the total hours worked is no more than 12 hours, the second meal period may be waived* by mutual consent of the employer and the employee only if the first meal period was not waived."  (Italics added.)

Furthermore, section 516 explains:  "*Except as provided in Section 512*, the [IWC] may adopt or amend working condition orders with respect to break periods, meal periods, and days of rest for any workers in California consistent with the health and welfare of those workers."  (Italics added.)

Finally, section 11(D) states in relevant part:  "Notwithstanding any other provision of this order, *employees in the health care industry who work shifts in excess of eight* (8) *total hours in a workday may voluntarily waive their right to one of their two meal periods*."  (Italics added.)

### B.  The Applicable Principles of Statutory Interpretation

"We apply the usual rules of statutory interpretation to the Labor Code, beginning with and focusing on the text as the best indicator of legislative purpose."  (*Brinker*, *supra*, 53 Cal.4th at p. 1026.)  In light of the remedial nature of the legislative enactments authorizing the regulation of wages, hours and working conditions for the protection and benefit of employees, "'the statutory provisions are to be liberally construed with an eye to promoting such protection.'  [Citations.]"  (*Id*. at pp. 1026-1027.)

When the validity of an IWC wage order is conceded, it is entitled to extraordinary deference and the usual rules of statutory interpretation apply.  (*Brinker*, *supra*, 53 Cal.4th at p. 1027.)  However, when the validity of a wage order is challenged, no such deference is due and the usual rules of statutory interpretation do not apply.  (*Bearden v. U.S. Borax, Inc.* (2006) 138 Cal.App.4th 429, 435-437 (*Bearden*).)

6

Because the authority of an administrative agency to adopt regulations is limited by the enabling legislation, an administrative regulation must "be within the scope of authority conferred and in accordance with standards prescribed by other provisions of law." (Gov. Code, § 11342.1.) "'Whenever by the express or implied terms of any statute a state agency has authority to adopt regulations to implement, interpret, make specific or otherwise carry out the provisions of the statute, no regulation adopted is valid or effective unless consistent and not in conflict with the statute and reasonably necessary to effectuate the purpose of the statute." (Gov. Code, § 11342.2.)' [Citation.]" (*Bearden*, *supra*, 138 Cal.App.4th at pp. 435-436.)

"'Even apart from these statutory limits, it is well established that the rulemaking power of an administrative agency does not permit the agency to exceed the scope of authority conferred on the agency by the Legislature. [Citation.] "A ministerial officer may not . . . under the guise of a rule or regulation vary or enlarge the terms of a legislative enactment or compel that to be done which lies without the scope of the statute and which cannot be said to be reasonably necessary or appropriate to subserving or promoting the interests and purposes of the statute." [Citation.] And, a regulation which impairs the scope of a statute must be declared void. [Citations.] [Citation.]'" (*Bearden*, *supra*, 138 Cal.App.4th at p. 436.)

"We apply the standard for assessment of the validity of a formal regulation stated by our Supreme Court in *Agnew* [*v. State Bd. of Equalization* (1999) 21 Cal.4th 310, 321]: "'[T]he judicial function is limited to determining whether the regulation (1) is 'within the scope of the authority conferred' (Gov. Code, [former] § 11373) and (2) is 'reasonably necessary to effectuate the purpose of the statute.' (Gov. Code, § 11374)." [Citation.]'" (*Bearden*, *supra*, 138 Cal.App.4th at p. 436.) And finally, "[w]hile we respect an administrative agency's construction of a statute in adopting a regulation, we '"must . . . independently judge the text of the statute."'" [Citation.]" (*Ibid.*)

7

### C. The Partial Invalidity of Section 11(D)

We now turn to plaintiffs' primary contention that section 11(D) is partially invalid because it conflicts with section 512(a), and because it creates an additional exception for health care workers, beyond the second meal period waiver exception in section 512(a), all in violation of section 516.

We agree there is a conflict between section 11(D) and section 512(a). As our Supreme Court recognized in *Brinker*, section 11(D) permits health care workers to waive their second meal periods, even on shifts in excess of 12 hours, and thus section 11(D) "conflicts" with section 512(a), which limits second period meal waivers to shifts of 12 hours or less. (*Brinker*, *supra*, 53 Cal.4th at p. 1047.)

Furthermore, we agree the conflict between section 11(D) and section 512(a) creates an unauthorized additional exception to the general rule set out in section 512(a), beyond the express exception for waivers on shifts of no more than 12 hours. "'Under the maxim of statutory construction, *expressio unius est exclusio alterius*, if exemptions are specified in a statute, we may not imply additional exemptions unless there is a clear legislative intent to the contrary. [Citation.]' [Citation.]" (*Bearden*, *supra*, 138 Cal.App.4th at p. 437.)

Hospital argues the legislative history of sections 512 and 516 supports the additional regulatory exception embodied in section 11(D) and permits second meal period waivers on shifts more than 12 hours. We disagree.

"The IWC has long been understood to have the power to adopt requirements beyond those codified in statute. [Citations.] Section 516 creates an exception; it bars the use of this power to diminish section 512's protections. . . . While the Legislature in section 516 generally preserved the IWC's authority to regulate break periods, it intended to prohibit the IWC from amending its wage orders in ways that 'conflict[ ] with [the] 30-minute meal period requirements' in section 512. [Citations.]" (*Brinker*, *supra*, 53 Cal.4th at pp. 1042-1043.)

8

Section 512 was enacted in 1999, as part of Assembly Bill No. 60 (Stats. 1999, ch. 134, § 6, p. 1823 (AB 60)), which among other things repealed five wage orders, including IWC wage order No. 5-98 (Jan. 1, 1998), and required the IWC to review its wage orders and readopt orders conforming to the Legislature's expressed intentions. (§ 517; Stats. 1999, ch. 134, § 21, p. 1829.) Section 512 set out statutory meal period requirements for the first time. (*Brinker*, *supra*, 53 Cal.4th at p. 1045.)

"The IWC complied with the [AB 60] directive to adopt new wage orders. Pending completion of plenary review, it issued an interim wage order applicable to all industries, including those previously and subsequently covered by Wage Order No. 5. Notably, the interim order mirrored section 512's language, spelling out that a second meal period was required after 10 hours of work . . . . From the text of the interim order and the official explanation, it is apparent the IWC intended a requirement parallel to that of the Legislature's section 512 . . . ." (*Brinker*, *supra*, 53 Cal.4th at pp. 1045-1046.)

"Thereafter, the IWC held public hearings and adopted revised wage orders for each industry, including the current version of Wage Order No. 5, wage order No. 5-2001. . . . [¶] With only limited exceptions, the IWC intended its 2001 wage orders to embrace section 512's meal period requirements, not impose different ones. . . . Thus, as to the majority of its 2001 wage orders, the IWC did not intend to impose a different meal period requirement than that spelled out in section 512 . . . ." (*Brinker*, *supra*, 53 Cal.4th at p. 1046.)

"The IWC had originally modified the meal waiver requirements in wage order Nos. 4 and 5 in 1993, in response to a health care industry petition to permit its employees to waive a second meal period on longer shifts in order to leave earlier. [Citations.] The IWC later extended similar waiver rights to all employees covered by these wage orders and three others, but that extension was among many wage order changes repealed by the Legislature [under AB 60] in 1999. [Citations.]" (*Brinker*, *supra*, 53 Cal.4th at p. 1047.)

9

"Thereafter, health care representatives persuaded the IWC to at least preserve expanded waiver rights for their industry, along the lines of those originally afforded in 1993. [Citation.] Accordingly, wage orders Nos. 4-2001 and 5-2001 each contains a provision absent from other wage orders, permitting health care employees to waive one of two meal periods on longer shifts. [Citations.]" (*Brinker*, *supra*, 53 Cal.4th at p. 1047.)

We see nothing in this legislative history to support hospital's argument the additional regulatory exception embodied in section 11(D) for shifts longer than 12 hours is consistent with the Legislature's intent. To the contrary, everything in this legislative history evidences the intent to prohibit the IWC from amending its wage orders in ways that conflict with meal period requirements in section 512, including the proviso second meal periods may be waived only if the total hours worked is less than 12 hours.

Hospital's arguments for a contrary conclusion are unavailing. First, hospital argues section 11(D) is consistent with section 512(a). Hospital is mistaken. As noted above, there is a conflict between the plain language of section 11(D) and the plain language of section 512(a), and that conflict was specifically recognized in *Brinker*. (*Brinker*, *supra*, 53 Cal.4th at p. 1047.) In this respect, section 11(D) contravenes the "[e]xcept as provided in Section 512" limitation on the IWC's authority to adopt or amend working condition orders under section 516.

Next, hospital argues the amended version of section 516 is irrelevant, because Wage Order No. 5 was promulgated on June 30, 2000, *before* the September 19, 2000 amendment to section 516 which narrowed the IWC's authority. Again hospital is mistaken. The September 19, 2000 amendment was adopted as an urgency measure and became effective that same day. (Sen. Bill No. 88 (1999-2000 Reg. Sess.); Stats. 2000, ch. 492, § 4 (SB 88).) But Wage Order No. 5 first became effective on October 1, 2000, *after* the September 19, 2000 amendment. (Cal. Code Regs., tit. 8, § 11050.) Therefore, Wage Order No. 5 is subject to the amended version of section 516.

10

Hospital also argues the amended version of section 516 does not apply because Wage Order No. 5 is "not merely accorded 'extraordinary deference'" under *Brinker*, but "[r]ather, [is] 'final and conclusive for all purposes'" under section 517. We are not persuaded. Section 517 was also enacted in 1999, as part of AB 60. Among other things, it required the IWC to conduct a review of wages, hours, and working conditions in various industries, including the health care industry. (§ 517, subd. (b).) It also required the IWC, "at a public hearing to be concluded by July 1, 2000, [to] adopt wage, hours, and working conditions orders consistent with this chapter without convening wage boards." (§ 517, subd. (a).) In this context, section 517 provided those "orders shall be final and conclusive for all purposes." (*Ibid.*)

Focusing on the text of section 517, subdivision (a) as the best indicator of legislative purpose, we believe the phrase "final and conclusive for all purposes" means for all *IWC* purposes. Certainly, nothing in the text suggests the Legislature intended the phrase to foreclose judicial consideration of whether the IWC acted within the scope of the authority conferred as hospital contends. Further, the only case cited by hospital on this point does not even discuss the meaning of the phrase. (*Singh v. Superior Court* (2006) 140 Cal.App.4th 387, 397.) In any event, our view comports with the rule of liberal construction with an eye to promoting the remedial nature of the statutes authorizing IWC working condition orders consistent with the protection of employees.

Finally, hospital argues *Brinker* "confirmed" the validity of second meal periods waivers on shifts longer than 12 hours. Not true. *Brinker* did discuss the conflict between Wage Order No. 5 and section 512, but only in the context of determining, "Wage Order No. 5 imposes no meal *timing* requirements beyond those in section 512." (*Brinker*, *supra*, 53 Cal.4th at p. 1049, italics added.) *Brinker* did not discuss, let alone decide, whether the IWC exceeded its authority by enacting section 11(D) to the extent that it authorizes health care workers to waive their second meal periods on shifts longer than 12 hours.

11

For all of these reasons, we agree with *Bearden* "section 516, as amended in 2000, does not authorize the IWC to enact wage orders inconsistent with the language of section 512." (*Bearden*, *supra*, 138 Cal.App.4th at p. 438.)  Furthermore, we agree, "The broad powers granted to the IWC do not extend to the creation of additional exemptions from the meal period requirement beyond those provided by the Legislature." (*Id.* at p. 440.)  Therefore, we conclude the IWC exceeded its authority and declare section 11(D) is partially invalid to the extent it authorizes health care workers to waive their second meal periods on shifts longer than 12 hours.

*2.  The Retroactivity of Our Decision Must Be Litigated on Remand, With One Exception.*

Plaintiffs contend our decision partially invalidating section 11(D) must be given full retroactive effect.  Hospital contends our decision should not be given any retroactive effect.[3]  We conclude, with the exception of plaintiffs' premium wage claims based on section 226.7, the retroactive application of our decision must be litigated on remand.

"'As a general rule, judicial decisions are given retroactive effect, even if they represent a clear change in the law.  [Citation.]  The exception is when considerations of fairness and public policy are so compelling in a particular case that, on balance, they outweigh the considerations that underlie the basic rule.  [Citation.]  This exception applies in particular when a party justifiably has relied on the former rule. [Citations.]'  [Citation.]" (*Bearden*, *supra*, 138 Cal.App.4th at p. 442.)

---

[3]  On July 28, 2014 we granted the request of the California Hospital Association to file a brief as amicus curiae in support of hospital's position on retroactivity.

Together with their supplemental briefing in this appeal, hospital filed two requests for judicial notice, primarily consisting of materials reflecting the legislative history of the Labor Code provisions and IWC wage orders at issue.  In response we advised all parties we would address both requests in our opinion.  No opposition to either request for judicial notice was filed.  Therefore, we now grant hospital's requests for judicial notice filed July 18, 2014 and August 28, 2014.

"Several factors must be considered in determining whether a decision should be given retroactive application: 'Particular considerations relevant to the retroactivity determination include the reasonableness of the parties' reliance on the former rule, the nature of the change as substantive or procedural, retroactivity's effect on the administration of justice, and the purposes to be served by the new rule. [Citations.]' [Citations.]" (*Bearden*, *supra*, 138 Cal.App.4th at p. 443.)

Recognizing these principles, the retroactive application of our holding that section 11(D) is partially invalid necessarily involves factual and policy issues not before us on review of a summary judgment. Therefore, with one exception, we do not opine on the potential liability of hospital for violations of section 512(a) committed before today. Those matters must be initially addressed in the trial court, allowing the parties an opportunity to fully litigate the general rule of retroactivity and its exceptions.

Nevertheless, plaintiffs' premium wage claims based on section 226.7, subdivision (c) present an issue of law that has been fully developed. (*Bearden*, *supra*, 138 Cal.App.4th at p. 443; *Lazarin v. Superior Court* (2010) 188 Cal.App.4th 1560 (*Lazarin*).) *Bearden* and *Lazarin* both addressed the issue in the context of holding invalid the second meal period exemption for employees covered by collective bargaining agreements embodied in section 10(E) (section 10(E)) of IWC Order No. 16-2001 (Cal. Code Regs., tit. 8, § 11060; Wage Order No. 16). This was because section 10(E) conflicts with section 512(a), and because section 10(E) created an additional exception, beyond the second meal period waiver exception in section 512(a) and section 10(B) of Wage Order No. 16, all in violation of section 516.

*Bearden* resolved the retroactivity issue against the plaintiffs reasoning: "The problem with plaintiffs' position is that there was no violation of an IWC *order*. Even though we hold that the exception of section 10(E) is invalid, it is part of the IWC order. Consequently, there is no basis for application of section 226.7." (*Bearden*, *supra*, 138 Cal.App.4th at p. 443.)

13

*Lazarin* resolved the retroactivity issue in favor of the plaintiffs. (*Lazarin*, *supra*, 188 Cal.App.4th at pp. 1577-1584.) *Lazarin* analyzed the issue separately for section 226.7 claims that arose during two different time periods—*before* the decision in *Bearden* became final and *after* the decision in *Bearden* became final.

With regard to the defendant's potential liability for failure to provide second meal periods after *Bearden*, the *Lazarin* court found the trial court had misapplied *Bearden*. (*Lazarin*, *supra*, 188 Cal.App.4th at pp. 1577-1580.) The *Lazarin* court explained "no fair construction of the *Bearden* court's holding that its ruling invalidating section 10(E) applied 'prospectively only' with respect to liability for premium pay under section 226.7 supports the conclusion an employer who thereafter denies meal periods required by section 512 . . . is not obligated to compensate its employees for their injuries as specified in section 226.7." (*Id.* at p. 1578.) This conclusion in *Lazarin* was based largely on an express severability clause contained in Wage Order No. 16. (*Ibid.*)

With regard to potential liability for failure to provide second meal periods before *Bearden*, the *Lazarin* court "respectfully disagree[d] with *Bearden's* conclusion that employees denied uninterrupted meal periods required by section 512 . . . are not entitled to recover an additional hour of wages for any period prior to a judicial decision invalidating section 10(E)'s exemption for employees covered by qualifying collective bargaining agreements." (*Lazarin*, *supra*, 188 Cal.App.4th at p. 1580).

The *Lazarin* court went on analyze the issue *de novo*, in light of general retroactivity principles and our Supreme Court's holding in *Murphy v. Kenneth Cole Productions, Inc.* (2007) 40 Cal.4th 1094, that the additional hour of pay provided by section 226.7 constitutes a premium wage, not a penalty. (*Lazarin*, *supra*, 188 Cal.App.4th at pp. 1580-1584). The *Lazarin* court explained that ever since adoption of AB 60, "employers in this state have been on clear notice," pursuant to sections 512(a) and 516, "they were required to provide employees with a second . . . meal period when they worked more than 10 hours in a day." (*Id.* at p. 1583.)

14

The *Lazarin* court further explained: "The issue, then, is not whether [employer] was on notice its failure to provide required meal periods was unlawful—it surely was—but whether it is somehow unfair to apply to [employer] the particular remedy specified in section 226.7 for its actions prior to the decision in *Bearden*. We understand the *Bearden* court's reluctance to punish an employer for conduct apparently excepted from penalties by the IWC. [Citation.] But no similar reticence is justified when section 226.7's additional hour of pay is properly understood as compensation to employees for injuries they have suffered. [Citation.] Having received the benefit of its employees working without the statutorily mandated second meal periods, there is nothing unfair about requiring [employer] to compensate them for that time in accordance with the formula prescribed by the Legislature." (*Lazarin*, *supra*, 188 Cal.App.4th at pp. 1583-1584.)

"Finally, the linguistic paradox that stymied the mine workers' recovery under section 226.7 in *Bearden* . . . is illusory. Section 10(E) of wage order 16, invalid when adopted by the IWC because inconsistent with the specific provisions of section 512, was . . . 'void *ab initio*.' [Citation.] Not only was section 10(E) no longer part of wage order 16 once the Court of Appeal held the IWC had exceeded its authority by excepting workers covered by qualified collective bargaining agreements from the meal period requirements of section 512 and wage order 16, section 10(B), but also, as directed by the IWC itself, it was 'as if the part [so] held to be invalid . . . had not been included' in the wage order at all. [Citations.]" (*Lazarin*, *supra*, 188 Cal.App.4th at p. 1584.)

So the *Lazarin* court ultimately concluded: "In sum, there is no compelling reason of fairness or public policy that warrants an exception to the general rule of retroactivity for a judicial decision invalidating section 10(E) of wage order 16. Petitioners [plaintiffs] are entitled to seek premium pay under section 226.7 for any failure by [employer] to provide mandatory second meal periods before the *Bearden*

15

decision that falls within the governing limitations period [which is three-years under Code Civ. Proc., § 338, subd. (a)]." (*Lazarin*, *supra*, 188 Cal.App.4th at p. 1584.)

We believe the reasoning of *Lazarin* regarding the defendant's potential liability under section 226.7 for failure to provide second meal periods before *Bearden* invalidated the section 10(E) exception for workers covered by qualified collective bargaining agreements is persuasive. The same reasoning is equally applicable to hospital's potential liability under section 226.7 for failure to provide second meal periods before our decision partially invalidating section 11(D) to the extent it authorizes health care workers to waive their second meal periods on shifts over 12 hours.

To paraphrase *Lazarin*, ever since adoption of SB 88, employers in this state have been on clear notice, pursuant to sections 512(a) and 516, they were required to provide health care workers with a second meal period when they worked more than 12 hours in a day. (Cf. *Lazarin*, *supra*, 188 Cal.App.4th at p. 1583.) The issue, then, is not whether hospital was on notice its failure to provide the required second meal periods was unlawful—it surely was—but whether it is somehow unfair to apply to hospital the particular remedy specified in section 226.7 for its actions prior to our decision today.

We also understand the *Bearden* court's reluctance to punish an employer for conduct apparently authorized by the IWC. But again no similar reticence is justified when section 226.7's additional hour of pay is properly understood as compensation to employees for injuries they have suffered. Having received the benefit of its employees working without the statutorily mandated second meal periods, there is nothing unfair about requiring hospital to compensate them for that time in accordance with the formula prescribed by the Legislature. (Cf. *Lazarin*, *supra*, 188 Cal.App.4th at pp. 1583-1584.)

Finally, we agree the linguistic paradox that stymied the mine workers' recovery under section 226.7 in *Bearden* is illusory. Section 11(D), invalid as adopted by the IWC because inconsistent with the specific provisions of section 512(a), was void *ab initio*. (Cf. *Lazarin*, *supra*, 188 Cal.App.4th at p. 1584.) Further, as directed by the IWC

16

itself, it was "as if the part so held to be invalid . . . had not been included" in Wage Order No. 5 at all. (Wage Order No. 5, § 21; cf. Wage Order No. 16, § 19.)

In sum, there is no compelling reason of fairness or public policy that warrants an exception to the general rule of retroactivity for our decision partially invalidating section 11(D). Plaintiffs are entitled to seek premium pay under section 226.7 for any failure by hospital to provide mandatory second meal periods before today that falls within the governing three-year limitations period. (*Murphy v. Kenneth Cole Productions, Inc.*, (2007) 40 Cal.4th 1094, 1102-1103; Code Civ. Proc., § 338, subd. (a).)

*3. The Court Incorrectly Granted Summary Judgment Against Gerard.*

Having concluded plaintiffs' second meal period waiver theory is potentially viable because section 11(D) is partially invalid as a matter of law, we now turn to plaintiffs' claim the court incorrectly granted summary judgment against Gerard because there are triable issues of material fact. "We review a grant of summary adjudication de novo and decide independently whether the facts not subject to triable dispute warrant judgment for the moving party as a matter of law. [Citation.] [¶] The proper interpretation of a statute and the application of the statute to undisputed facts are questions of law, which we also review de novo. [Citations.]" (*Lazarin*, *supra*, 188 Cal.App.4th at p. 1569.)

*A. The Court Erroneously Sustained Hospital's Evidentiary Objections.*

Preliminarily, plaintiffs contend the court erroneously sustained hospital's "'failure to authenticate'" objection to the timecards and wage statements Gerard offered in opposition to the motion for summary judgment. In particular, the declaration of plaintiffs' counsel Michael Coats states: "8) Attached as Exhibit 7 are true and correct copies of Plaintiff's timecards, which were produced by Defendant in this litigation in response to Plaintiff's document requests and bate-labeled DEF 00047, 00311-00316, 00338-00343, 00355-00360, 00382, 00390 . . . . [¶] 9) Attached as Exhibit 8 are true and correct copies of Plaintiff's wage statements issued by Defendant, which were produced

17

by Defendant in this litigation in response to Plaintiff's document requests and bate-labeled DEF 00317, 00344, 00361, 00383, 00391, 00397, 00409 . . . ."

Defendant objected to these documents on the following grounds: "**Failure to Authenticate.** (Evid. Code § 1400, *et seq*.) Plaintiff's counsel fails to offer any authentication for the document. He merely purports to declare the documents are timecards [wage statements]. This is insufficient. See, e.g., Claudio v. Regents of the Univ. of Cal., 134 Cal.App.4th 224, 244 (2005) ('Plaintiff's attorney merely submitted his own declaration that the attached copy was a "true and correct copy . . . ." **This is not proper authentication**.')" The court agreed.

None of the authorities cited support the failure to authenticate objection. Evidence Code section 1400 et seq. state the authentication requirements and prescribe various means of authenticating and proving writings. Evidence Code section 1414 provides: "A writing may be authenticated by evidence that: [¶] (a) The party against whom it is offered has at any time admitted its authenticity; or [¶] (b) The writing has been acted upon as authentic by the party against whom it is offered." The Coats declaration satisfies both subdivisions.

Further, while *Claudio v. Regents of University of California* (2005) 134 Cal.App.4th 224, 244 did say the declaration of the plaintiff's attorney was not proper authentication for the disputed letter, the critical problem was that, "Plaintiff's [own] declaration did not mention the letter." The same is not true in this case.

Here, Gerard's own declaration (an exhibit to the Coats declaration) states: "Attached as Exhibit B are true and correct copies of a portion of my time records from August of 2004 through March of 2008, which were produced by Defendant in this litigation. Also attached as Exhibit B are true and correct copies [of] a portion of my wage records from August of 2004 through March of 2008, which were produced by Defendant in this litigation." A comparison of the bates numbers in Exhibit B reveals they are the same as the relevant documents in Exhibits 7 and 8.

18

For both reasons, the court erroneously sustained hospital's objection to the timecards and wage statements Gerard offered as Exhibits 7 and 8 in opposition to the motion for summary judgment. These documents should have been considered.

B. *There Are Triable Issues of Material Fact.*

Regarding Gerard's first cause of action for meal period violations, the court found: "ISSUE ONE: There is no disputed issue of material fact . . . because Plaintiff was provided meal periods as required by law. (See Defendant's Undisputed Material Facts Nos. 1-3, 5-10, 12-28, 30-33.) [¶] ISSUE TWO: There is no disputed issue of material fact . . . because Plaintiff received all Labor Code section 226.7 premiums she requested and because she affirmatively represented under penalty of perjury that she received all meal and rest periods. (See Defendant's Undisputed Material Facts Nos. 6-10, 12-33.)" The court made nearly identical findings as to all of Gerard's derivative and PAGA claims based upon the first cause of action.

Gerard asserts the court erred because there are triable issues of material fact as to whether she worked shifts longer than 12 hours, and whether hospital provided her second meal periods or wage penalties owed for missed second meal periods on shifts over 12 hours, on at least 10 specific dates in 2005, 2007, and 2008. We agree.

Gerard's opposing separate statement of disputed and undisputed facts, and the supporting evidence cited therein, is sufficient to meet her burden "to show that a triable issue of one or more material facts exists as to" the first cause of action (Code. Civ. Proc., § 437c, subd. (*o*)(2)). Specifically there are triable issues as to hospital's material fact numbers 2, 3, 6, 8, 10, 14, 15, 16, 17, 18, 19, 20, 22, 23, 24, 25, 26, 27, 30, 32 and 33, all insofar as they relate to the alleged failure to provide second meal periods or premium pay in lieu thereof on shifts over 12 hours.

In short, there are triable issues regarding Gerard's contention she worked numerous shifts longer than 12 hours, skipped her second meal period, and did not receive premium pay. Sstated conversely, there are triable issues regarding hospital's

19

contention that it fulfilled its duty to "provide" Gerard with the opportunity to take her second meal break on each of her 12-plus-hour shifts. (*Brinker*, *supra*, 53 Cal.4th at p. 1040.) Thus, the court incorrectly granted summary judgment against Gerard.

*4. The Court Improperly Denied McElroy and Carl Class Certification.*

McElroy and Carl argue the court improperly denied class certification for several reasons. Among other things they cite as an abuse of discretion the court's community interest analysis based on its erroneous "legal assumption that 'liability is not established by an illegal policy.'" Plaintiffs contend that assumption is contrary to the holding of *Brinker*, *supra*, 53 Cal.4th at page 1033, and *Faulkinbury v. Boyd & Associates, Inc.* (2013) 216 Cal.App.4th 220, 232. We conclude this argument has merit.

*Brinker* summarized the applicable standard of review as follows: "On review of a class certification order, an appellate court's inquiry is narrowly circumscribed. 'The decision to certify a class rests squarely within the discretion of the trial court, and we afford that decision great deference on appeal, reversing only for a manifest abuse of discretion: "Because trial courts are ideally situated to evaluate the efficiencies and practicalities of permitting group action, they are afforded great discretion in granting or denying certification." [Citation.] A certification order generally will not be disturbed unless (1) it is unsupported by substantial evidence, (2) it rests on improper criteria, or (3) it rests on erroneous legal assumptions. [Citations.]' [Citations.]" (*Brinker*, *supra*, 53 Cal.4th at p. 1022.)

The central truth of the court's nearly two-page order denying class certification is set forth near the beginning where the court explained: "One of the most basic requirements for class certification is that the proposed Representative Plaintiffs show that they have a prima facie claim. For, if Plaintiffs do not have a claim there can be no typicality or commonality. Here, the proposed Representative Plaintiffs have failed to show that they have any claim against the Defendant."

20

As we have explained above, plaintiffs have shown their invalid second meal period policy and waiver theory is potentially viable, and plaintiffs have proffered substantial evidence hospital violated the governing law by failing to provide second meal periods or premium pay in lieu thereof on shifts longer than 12 hours as required. The court's contrary conclusions rest on improper criteria and assumptions that are erroneous as a matter of law. Consequently, we conclude the court abused its discretion by denying McElroy and Carl class certification on the grounds plaintiffs failed to show they have any claim. We express no opinion on the other stated grounds for denial of class certification but instead direct the court to consider them further on remand.

**DISPOSITION**

The summary judgment against Gerard and the order denying McElroy and Carl class certification are reversed. The case is remanded to the trial court, and the trial court is directed to (a) enter a new order denying the motion for summary judgment, and (b) consider the other stated grounds for denial of class certification further in the light of this opinion. The requests for judicial notice are granted. Plaintiffs are entitled to recover their costs on appeal.



                                                              THOMPSON, J.

WE CONCUR:


BEDSWORTH, ACTING P. J.


IKOLA, J.


21